# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

BRIAN BAILEY and MICHELLE
BAILEY,

     Plaintiffs,

vs.                                                                                No. CIV 19-0519 JB\GBW

STEVE MARKHAM; LUCIANO
BARRIENTOS; VOLTAIRE BUILDERS,
LLC; RICK F. ATCHINSON; and
PLUMBSQUARE CONSTRUCTION, INC.,

     Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on: (i) Defendant Rick F. Atchinson and
Plumbsquare Construction, Inc.'s Motion to Dismiss for Failure to State a Claim, filed June 25,
2019 (Doc. 7)("Motion to Dismiss"); and (ii) the Plaintiffs' Motion to Remand the Case to State
Court, filed July 26, 2019 (Doc. 17)("Motion to Remand").  The Court held a hearing on
September 6, 2019.  See Clerk's Minutes, filed September 6, 2019 (Doc. 36).  The primary issues
are: (i) whether the parties lack diversity in this case such that the case should be remanded to state
court, because Defendants Rick F. Atchinson and Plumbsquare Construction, Inc. ("Plumbsquare
Construction") and Plaintiffs Brian Bailey and Michelle Bailey (collectively, "the Baileys") are
citizens of the State of New Mexico; (ii) whether remand is necessary, because there is a possibility
that the Baileys will recover against Atchinson and Plumbsquare Construction, and thus the
Baileys did not fraudulently join Atchinson and Plumbsquare Construction; and (iii) whether
removal was proper, even though Defendant Luciano Barrientos did not consent to removal by
Defendants Steve Markham and Voltaire Builders, Inc. ("Voltaire Builders").  The Court

concludes that: (i) the parties lack diversity, because the Baileys, Atchinson, and Plumbsquare Construction are citizens of the same state and thus cannot establish complete diversity; (ii) Atchinson and Plumbsquare Construction have not established fraudulent joinder, because there is a reasonable basis to believe that the Baileys might be able to recover against Plumbsquare, and thus remand is necessary; and (iii) removal was proper, because although Barrientos did not consent to removal, the Baileys never served Barrientos. Because the Court concludes that it lacks subject-matter jurisdiction, the Court will remand the case to the Fifth Judicial District Court, County of Chaves, State of New Mexico, and will leave the Motion to Dismiss for the state court to decide.

## FACTUAL BACKGROUND

The Baileys are New Mexico citizens. See Complaint ¶ 1, at 15. Markham and Voltaire Builders are Texas citizens. See Notice of Removal ¶¶ 14-15, at 5; Complaint ¶¶ 2, 4, at 15. The Baileys, Markham, and Voltaire Builders believe Atchinson and Plumbsquare Construction are New Mexico citizens. See Complaint ¶¶ 5-6, at 15-16; Notice of Removal ¶¶ 18-19, at 5.[1] The Baileys, Markham, and Voltaire Builders believe Barrientos is a Texas citizen. See Complaint ¶ 3, at 15; Notice of Removal ¶ 16, at 4. The Complaint alleges five state-law counts: (i) breach of contract; (ii) restitution for unlicensed contracting; (iii) civil conspiracy; (iv) disregarding limited

---

[1]Voltaire Builders is limited liability company that is "organized in the State of Texas." Notice of Removal ¶ 15, at 5. Markham and Voltaire Builders note that "a limited liability company ('LLC') has the citizenship of each of its 'members.'" Notice of Removal ¶ 15, at 5 (quoting Carden v. Arkoma Assoc., 494 U.S. 185, 195 (1990)). According to Markham and Voltaire Builders, Markham is Voltaire Builders' only member, Voltaire is a Texas citizen, and Voltaire Builders' "sole office is in Dallas, Texas." Notice of Removal ¶ 15, at 5 (citing Declaration of Steve Markham at 37 (dated June 5, 2019), filed June 5, 2019 (Doc. 1)("Markham Decl.")).

liability projections for Voltaire Builders; and (v) disregarding limited liability protections for Plumbsquare Construction.  See Complaint ¶¶ 53-90, at 20-25.

The Baileys allege that "Markham and Barrientos, using Voltaire as their alter ego, have illegally contracted to provide contracting services in the State of New Mexico without a New Mexico contractor's license to several New Mexico residents."  Complaint ¶ 7, at 16.  The Baileys allege that they hired Markham to construct an addition to their home in Chaves County, New Mexico.  See Complaint ¶ 14, at 16.  According to the Baileys, "[o]n or about March 21, 2017 Markham prepared an Agreement for the agreed-upon work and transmitted it to Plaintiffs for execution by e-mail in the name of Voltaire."  Complaint ¶ 16, at 16.  The Baileys allege that Markham and Voltaire Builders started the construction project, and that the Baileys made several payments to Voltaire Builders.  See Complaint ¶¶ 23-24, at 17.  The Baileys claim that they also made payments to Barrientos, "who acted as foreman" on the construction project, and whom Markham said was a "partner in Voltaire and had full authority to act on Voltaire's behalf."  Complaint ¶¶ 27-28, at 17.  The Baileys allege that, when Markham refused to complete the construction project, the Baileys began looking for a new contractor and discovered that Markham and Voltaire Builders' "permit on the job had been applied for and issued in the name of Plumbsquare."  Complaint ¶ 31, at 18.  The Baileys allege that they had never heard of or met anyone purporting to work for Plumbsquare Construction, that Plumbsquare Construction is not a party to the construction agreement, and that Atchinson is Plumbsquare Construction's president and sole director.  See Complaint ¶¶ 33, 40, at 18.  The Baileys allege that they also learned that Markham, Barrientos, and Voltaire Builders lack a New Mexico contractor's license.  See Complaint ¶¶ 36-38, at 18.  The Baileys allege that "Atchinson caused Plumbsquare to allow Markham/Barrientos/Voltaire [to] make use of its license for some consideration to Markham so

that Markham could skirt the laws of the State of New Mexico and provide contracting services without the required New Mexico licensure to the Plaintiffs."  Complaint ¶ 41, at 18-19.  The Baileys allege that they have paid $2,288,734.62 to Markham, Barrientos, and Voltaire Builders, and that they have hired other contractors to complete the construction project.  See Complaint ¶¶ 42, 43, at 19.

## PROCEDURAL BACKGROUND

The Baileys filed this case against Markham, Barrientos, Voltaire Builders, Atchinson, and Plumbsquare Construction, in the Fifth Judicial District Court, County of Chaves, State of New Mexico, on May 3, 2019.  See Complaint at 15.  The Baileys served the Complaint upon Voltaire Builders on May 6, 2019.  See Notice of Removal ¶ 2, at 1; Affidavit of Service of Process at 77 (dated May 7, 2019), filed June 5, 2019 (Doc. 1)("Voltaire Builders Aff.").  The Baileys served the Complaint upon Atchinson and Plumbsquare Construction on May 7, 2019.  See Summons at 73 (dated May 3, 2019), filed June 5, 2019 (Doc. 1)("Atchinson Summons"); Summons at 75 (dated May 3, 2019), filed June 5, 2019 (Doc. 1)("Plumbsquare Construction Summons").  Markham "deemed himself served as of May 7, 2019."  Notice of Removal ¶ 4, at 2.  See Declaration of Steve Markham at 37 (dated June 5, 2019), filed June 5, 2019 (Doc. 1)("Markham Decl.").  As for Barrientos, the Baileys admit that "there had been no formal service," because they could not locate Barrientos.  Draft Transcript of Hearing at 2:20-21 (taken September 6, 2019)("Tr.")(McKelvy).[2]

---

[2]The Court's citations to the Draft Transcript of Hearing (taken September 6, 2019), refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

Markham and Voltaire Builders filed the Notice of Removal on June 5, 2019. See Notice of Removal at 1. Markham and Voltaire Builders allege, in the Notice of Removal, that Atchinson and Plumbsquare Construction "were improperly and fraudulently joined." Notice of Removal ¶ 20, at 6. Markham and Voltaire Builders contend that "Plumbsquare and Atchinson are not required to join in or consent to the removal because they are not properly joined pursuant to [28 U.S.C. §] 1446(b)(2)(A)." Notice of Removal ¶ 37, at 12. Markham and Voltaire Builders also contend that "Barrientos is not required to join in or consent to removal as he has not yet been served." Notice of Removal ¶ 38, at 12. The Baileys argue that, although they did not serve the Complaint upon Barrientos, Markham and Voltaire Builders "entered a general appearance on behalf of" Barrientos by filing a notice in Fifth Judicial District Court, County of Chaves, State of New Mexico, that Markham and Voltaire Builders had filed a notice of removal. Motion to Remand at 11 (citing Notice of Filing Notice of Removal by Defendants Steve Markham, Luciano Barrientos and Voltaire Builders, LLC at 1 (dated June 6, 2019), filed July 26, 2019 (Doc. 17)("State Court Removal Notice")). The State Court Removal Notice designates Markham, Barrientos, and Voltaire Builders as the removing Defendants. See State Court Removal Notice at 1.

Atchinson and Plumbsquare Construction filed the Motion to Dismiss on June 25, 2019, and the Baileys filed the Motion to Remand on July 26, 2019. See Motion to Dismiss at 1; Motion to Remand at 1. Atchinson and Plumbsquare Construction state:

> Given that the motion to dismiss will play a central role in whether there is diversity among the parties and potentially avoid further time for the parties and the court over the proper forum for this litigat5ion [sic], Plumbsquare would ask that it be resolved prior to any ruling on the motion for remand.

Defendant Rick F. Atchinson and Plumbsquare Construction, Inc.'s Response to Motion to Remand at 1, filed August 6, 2019 (Doc. 21)("Plumbsquare Remand Response"). The Baileys contend that "it is incorrect for Defendants to suggest the Court could consider and rule upon the Motion to Dismiss before or apart from its consideration of the Plaintiffs' Motion to Remand." Plaintiffs' Reply to Defendants' Opposition to Plaintiffs' Motion to Remand the Case to State Court at 4, filed August 28, 2019 (Doc. 30)("Remand Reply"). This section summarizes all of the arguments that the Baileys, Markham, Voltaire Builders, Atchinson, and Plumbsquare Construction make in the Motion to Remand, in the Motion to Dismiss, in subsequent briefings, and at the September 6, 2019, hearing.

1.      **The Motion to Dismiss.**

In the Motion to Dismiss, Atchinson and Plumbsquare Construction move to dismiss all of the claims against them. See Motion to Dismiss at 1. Atchinson and Plumbsquare Construction note that, in the Complaint, the Baileys allege Voltaire Builders' breach of contract and seek restitution of funds paid to Voltaire Builders. See Motion to Dismiss at 1. Atchinson and Plumbsquare Construction argue that the Baileys "admit that Plumbsquare was not a party to the contract and that Plaintiffs had no dealings with Plumbsquare or any representative of Plumbsquare." Motion to Dismiss at 1 (citing Complaint ¶ 33, at 18). Atchinson and Plumbsquare Construction note that, unlike Voltaire Builders, "Plumbsquare is a validly licensed New Mexico contractor." Motion to Dismiss at 2. Atchinson and Plumbsquare Construction say that the Baileys allege that they "conspired with the other defendants" to allow Voltaire Builders to provide construction services without a contractor license. Motion to Dismiss at 2 (citing Complaint ¶¶ 67, 69, at 21-22). Atchinson and Plumbsquare Construction argue that the Baileys "offer no evidence to support any such civil conspiracy" aside from a construction permit that "was pulled in the name

of Plumbsquare." Motion Dismiss at 2. According to Atchinson and Plumbsquare Construction, even if it "was aware and/or participated in pulling the permit as alleged by Plaintiffs, . . . Plaintiffs still have failed to state a claim upon which relief may be granted." Motion to Dismiss at 2.

Atchinson and Plumbsquare Construction argue that the Baileys fail to state a claim upon which relief can be granted, because: (i) the Baileys "cannot satisfy the requirements for a cause of action for civil conspiracy"; and (ii) the Construction Industries Licensing Act, N.M. Stat. Ann. §§ 60-13-1 to 60-13-59, does not grant individuals a private right of action against licensed contractors. Motion to Dismiss at 2-3. Atchinson and Plumbsquare Construction state the elements for civil conspiracy that the Baileys must establish: (i) "'that a conspiracy between two or more individuals existed'"; (ii) "'that specific wrongful acts were carried out by the defendants pursuant to the conspiracy'"; and (iii) "'that the plaintiff was damaged as a result of such acts.'" Motion to Dismiss at 3 (quoting Silva v. Town of Springer, 1996-NMCA-022, ¶ 25, 912 P.2d 304, 310). See Armijo v. Nat'l Sur. Corp., 1954-NMSC-024, ¶ 30, 268 P.2d 339, 346-47. Atchinson and Plumbsquare Construction maintain that the Baileys cannot establish that "Plumbsquare committed some independent, unlawful act" that caused harm. Motion to Dismiss at 3 (citing Ettenson v. Burke, 2001-NMCA-003, ¶ 12, 17 P.3d 440, 445).

Atchinson and Plumbsquare Construction argue that the Baileys cannot establish that they committed an independent, unlawful act, because, in an unpublished opinion, the Court of Appeals of New Mexico "determined that the Construction Industries Licensing Act does not grant a private right of action to pursue the licensed contractor for the acts of an unlicensed contractor acting in his name." Motion to Dismiss at 3 (citing S & H Dev., LLC v. Parker, 2017 WL 3485065 (N.M. Ct. App. July 11, 2017)(unpublished)). Atchinson and Plumbsquare Construction argue that the facts in S & H Dev., LLC v. Parker are similar to the acts that the Baileys allege. See Motion to

Dismiss at 3.  According to Atchinson and Plumbsquare Construction, in <u>S & H Development, LLC v. Parker</u>, the Court of Appeals of New Mexico held:

> "While an ultimate purpose of the Act is to protect the public from unqualified contractors, . . . the Act appropriately and adequately provides measures that civilly and criminally punish violators. . . .  We see no legislative intent to afford relief beyond those measures under the circumstances in this case.  We hold that there exists no basis on which to imply a private right of action under the Act here."

Motion to Dismiss at 4 (quoting <u>S & H Dev., LLC v. Parker</u>, 2017 WL 3485065, ¶ 10, at *5)(alterations in Motion to Dismiss).  Atchinson and Plumbsquare Construction argue that, because the Baileys "cannot establish that Plumbsquare committed any separate and independent illegal act that would have given rise to a direct cause of action by Plaintiffs against Plumbsquare," they "cannot satisfy the requirements for a claim of civil conspiracy."  Motion to Dismiss at 4.  Atchinson and Plumbsquare Construction also contend that the Baileys cannot pierce Plumbsquare Construction's corporate veil, because "an action to pierce the corporate veil would depend on a valid claim existing against the corporation at a minimum, which it does not in the present case."  Motion to Dismiss at 4.

## 2. The MTD Response.

The Baileys responded to the Motion to Dismiss on July 10, 2019.  <u>See</u> Plaintiffs' Response to Atchinson and Plumbsquare's Motion to Dismiss, filed July 10, 2019 (Doc. 12)("MTD Response").  The Baileys recite the elements for establishing civil conspiracy: (i) "that a conspiracy between two or more individuals existed"; (ii) "that specific wrongful acts were carried out by the Defendants pursuant to the conspiracy"; and (iii) "that Bailey was damaged as a result of such acts."  MTD Response at 6 (citing <u>Ettenson v. Burke</u>, 2001-NMCA-003, ¶ 12, 17 P.3d 440, 445).  The Baileys allege that Atchinson and Plumbsquare Construction

conspired with the other Defendants to fraudulently induce them to enter into an agreement for contracting services with an unlicensed contractor and that they were damaged as a result thereof because of the unlicensed contractor's failure (1) to provide good and workmanlike service, (2) to finish in a timely manner, (3) to complete the Project, and (4) to follow the Act.

MTD Response at 7. According to the Baileys, their "civil conspiracy claim rests on a valid underlying cause of action, the defrauding of the Baileys by the Defendants, for which movants can be held liable jointly and severally individually along with the other Defendants." MTD Response at 7. The Baileys aver that Atchinson, Plumbsquare Construction, and the other Defendants "embarked on a joint venture, which is generally considered a partnership for a single transaction under New Mexico law." MTD Response at 7 (citing Lightsey v. Marshall, 1999-NMCA-147, ¶ 18, 992 P.2d 904, 908; N.M. Stat. Ann. §§ 54-1A-101(6), 54-1A-202(a)). The Baileys argue that "[a]ll partners are liable jointly and severally for all obligations of the partnership." MTD Response at 7 (citing N.M. Stat. Ann. § 54-1A-306(a)).

The Baileys note that S & H Development, LLC v. Parker, on which Atchinson and Plumbsquare rely in their Motion to Dismiss, is a "non-precedential opinion from the New Mexico Court of Appeals that . . . was not published and therefor has no precedential value to the Court or the parties." MTD Response at 8 (citing Gormley v. Coca-Cola Enters., 2004-NMCA-021, ¶ 10, 85 P.3d 252, 255-56). The Baileys also argue that S & H Dev., LLC v. Parker "does not require dismissal," because the case "was not dismissed," and "was tried before the court and the parties were allowed to request findings and conclusions." MTD Response at 8 (citing S & H Dev., LLC v. Parker, 2017 WL 3485065, ¶ 10, at *1). According to the Baileys, "[i]t is clear that the reason the Court of Appeals did not authorize that case to be precedential was based [on] the unique circumstances under the record in that case." MTD Response at 9.

The Baileys emphasize that, unlike in S & H Development, LLC v. Parker, "there is as yet no factual or trial record establishing the circumstances of this case," and "[t]here has been no discovery." MTD Response at 9. The Baileys also argue that S & H Devs., LLC v. Parker's "holding was limited to finding there was no implied right of action under the Act, and other independent tort claims were not preserved for review." MTD Response at 9. The Baileys note that they "have alleged independent torts, including fraud and conspiracy, and argued that the parties were engaged in a joint venture." MTD Response at 10. The Baileys aver that they are "not asking the Court to imply a private cause of action," because "all of the Defendants, being joint venturers in this scheme are jointly and severally liable for the penalty incurred as a result of the unlicensed contracting." MTD Response at 10-11. Alternatively, the Baileys argue that, even if they were seeking to imply a private cause of action under the Construction Industries Licensing Act, they would prevail. See MTD Response at 11 (citing Yedidag v. Roswell Clinic Corp., 2015-NMSC-012, ¶ 31, 346 P.3d 1136, 1146). The Baileys argue that they are within the class of people that the Construction Industries Licensing Act benefits, that the Legislative intent behind the Construction Industries Licensing Act supports creating a private remedy, and that a private remedy assists the Construction Industries Licensing Act's underlying purpose. See MTD Response at 11-13. The Baileys contend that the Supreme Court of New Mexico "would [likely] rule to provide a cause of action against licensed contractors," because the Supreme Court of New Mexico "has already found an implied cause of action in the Act." MTD Response at 13 (citing Mascarenas v. Jaramillo, 1991-NMSC-014, ¶ 16, 806 P.2d 59, 63).

### 3. The MTD Reply.

Plumbsquare Construction replied to the MTD Response on July 10, 2019. See Defendant Rick F. Atchinson and Plumbsquare Construction, Inc.'s Reply Brief in Support of its Motion to

Dismiss for Failure to State a Claim, filed July 10, 2019 (Doc. 13)("MTD Reply"). Atchinson and Plumbsquare Construction argue that none of the Baileys' alleged facts "suppl[ies] the requirement that 'a civil conspiracy must actually involve an independent, unlawful act that causes harm -- something that would give rise to a civil action on its own.'" MTD Reply at 1-2 (quoting Ettenson v. Burke, 2001-NMCA-003, ¶ 12, 17 P.3d 440). According to Atchinson and Plumbsquare Construction, the Baileys "fail[] to identify what unlawful act Plumbsquare committed." MTD Reply at 2. Atchinson and Plumbsquare Construction reiterate that, "'[b]ecause a civil conspiracy is a derivative claim, it requires an overt tortious act independent of the conspiracy.'" MTD Reply at 2 (quoting Clay v. Am. Tobacco Co., 188 F.R.D. 483, 500 (S.D. Ill. 1999)(Gilbert, J.)).

Atchinson and Plumbsquare Construction acknowledge that S & H Dev., LLC v. Parker is not precedential and not controlling, but they argue that the unpublished case is "instructive as it addresses an almost identical argument and interpretation of statute, which otherwise has never been interpreted in this context." MTD Reply at 2. Atchinson and Plumbsquare Construction contend that the Legislature of New Mexico "protect[s] New Mexicans who need contracting services from unqualified contractors . . . by civilly and criminally punishing violators." MTD Reply at 3 (citing S & H Dev., LLC v. Parker, 2017 WL 3485065, ¶ 10, at *5). According to Atchinson and Plumbsquare Construction, "the legislature in drafting the Construction Industries Licensing Act opted in this instance to only allow an administrative penalty in the way of a license suspension or revocation." MTD Reply at 3 (citing N.M. Stat. Ann. § 60-13-23(J)).

4.    **The Motion to Remand.**

In the Motion to Remand, the Baileys argue that "[t]here is no diversity jurisdiction and this case must be remanded." Motion to Remand at 2. The Baileys note that, in the Notice of

Removal, Markham and Voltaire Builders allege fraudulent joinder of Atchinson and Plumbsquare Construction. See Motion to Remand at 2. The Baileys contend that Markham and Voltaire Builders' argument that the "'sole function'" of joining Atchinson and Plumbsquare Construction as Defendants "'is to defeat diversity jurisdiction'" is conclusory, and "insufficient to establish fraudulent joinder and avoid remand." Motion to Remand at 6 (quoting Notice of Removal at 6-8). According to the Baileys, their claims will require "'a kind of merits determination'" and "'an intricate analysis of state law,'" and thus the case "'should be left to the state court where the action was commenced.'" Motion to Remand at 6 (quoting Montano v. Allstate Indem., 211 F.3d 1278, 2000 WL 525592, at *2 (10th Cir. April 14, 2000)(unpublished table opinion)). The Baileys again argue that S & H Dev., LLC v. Parker is "inapposite," because it "does not apply to a dismissal under Rule 12 [of the Federal Rules of Civil Procedure]." Motion to Remand at 7. The Baileys also aver that Court of Appeals of New Mexico "did not authorize that case to be published as precedential as a result of the fact-heavy inquiry required, and the unique circumstances under the record in that case." Motion to Remand at 7. The Baileys distinguish this case, in which "there is not yet any factual or trial record establishing the circumstances of this case." Motion to Remand at 7.

The Baileys assert that "their factual allegations support the independent tort of fraud" and that their claims warrant piercing Plumbsquare Construction's corporate veil "to reach the licensee who committed the bad acts that damaged [them]." Motion to Remand at 8. The Baileys state that they allege numerous tort claims and that they "could still amend their Complaint" to add new claims. Motion to Remand at 8. The Baileys argue that it is "clear" that the "law of New Mexico regarding unlicensed contractors gives rise to a claim in favor of Plaintiffs." Motion to Remand at 9 (citing Mascarenas v. Jaramillo, 1991-NMSC-014, ¶ 16, 806 P.2d at 63). The Baileys contend

that Atchinson and Plumbsquare Construction "knowingly violated" the Construction Industries Licensing Act and "did not supervise, oversee or make any effort to ensure proper workmanship of the construction done on Plaintiffs' residence under their license." Motion to Remand at 9. According to the Baileys, "there are sufficient facts as alleged to have a trial against all Defendants." Motion to Remand at 9.

The Baileys argue that, because their claims involve an "'intricate analysis of state law,'" their claims may not "'be disregarded for purposes of diversity jurisdiction.'" Motion to Remand at 9 (quoting Montano v. Allstate Indem., 211 F.3d 1278, 2000 WL 525592, at *2). The Baileys assert that Atchinson and Plumbsquare Construction "must not only allege but must prove 'there is *no possibility* of recovery by the plaintiff' against them, which means 'there is *no* reasonable basis for the district court to predict that the plaintiff *might* be able to recover' against said defendant." Motion to Remand at 10 (quoting Bio-Tec Envtl., LLC v. Adams, 792 F. Supp. 2d 1208, 1216 (D.N.M. 2011)(Browning, J.))(emphasis in Motion to Remand and not in Bio-Tec Envtl., LLC v. Adams). According to the Baileys, Atchinson and Plumbsquare Construction "have failed to prove that there is no possibility that Plaintiffs might recover against them, and have, thus, failed to carry their heavy burden. This case must, therefore, be remanded." Motion to Remand at 10.

Alternatively, the Baileys argue that Defendant Luciano Barrientos -- who had not been served when the other Defendants filed the Notice of Removal in federal court -- was joined in the removal notice that Markham and Voltaire Builders filed in state court, and thus, the notice "operate[s] as a general appearance, thereby waiving service." Motion to Remand at 10. According to the Baileys, "filing this notice in State Court was required and necessary to 'effect the removal' under Federal law; thus, removal was not completely filed and effected prior to

Defendant Barrientos' full entry of appearance in the case." Motion to Remand at 11. The Baileys argue that "[m]ore than 30 days have passed since Defendant Barrientos fully appeared in the action, and he has not filed a notice of consent to the removal here." The Baileys assert that "failure of a defendant to timely consent to removal within the statutory 30-day window requires remand." Motion to Remand at 12 (citing <u>Zambrano v. N.M. Corrections Dep't</u>, 256 F. Supp. 1179, 1185 (D.N.M. 2017)(Johnson, J.)). The Baileys conclude by arguing that Barrientos' failure "to file and serve notice of consent within 30 days of his full entry of appearance in the case sought to be removed is [] fatal. The Notice of Removal is defective, and the case must be remanded on this alone, as well." Motion to Remand at 12. The Baileys also request that the Court enter an "Order remanding the case to New Mexico State District Court, together with just costs and actual expenses including attorney's fees incurred as a result of the removal, and with such other further relief as the Court deems just and proper." Motion to Remand at 12.

### 5. The Plumbsquare Remand Response.

Atchinson and Plumbsquare Construction filed the Remand Response on August 6, 2019. <u>See</u> Remand Response at 1. The Plumbsquare Remand Response states:

> Plumbsquare takes no position on the Motion to Remand [17] on its merits. In fact, Plumbsquare acknowledges that if Plumbsquare remains a party to this litigation despite its Motion to Dismiss, which it should not be required to do, then complete diversity would not exist between the parties. Plumbsquare's only interest is in having a court hear and determine its prior filed motion to dismiss. Plumbsquare has now filed this motion twice, once in state court and once here, and the matter is fully briefed awaiting a decision. Given that the motion to dismiss will play a central role in whether there is diversity among the parties and potentially avoid further time for the parties and the court over the proper forum for this litigat5ion [sic], Plumbsquare would ask that it be resolved prior to any ruling on the motion for remand.

Plumbsquare Remand Response at 1.

6.    **The Voltaire Remand Response.**

Markham and Voltaire Builders responded to the Motion to Remand on August 14, 2019. See Opposition to Plaintiffs' Motion to Remand, filed August 14, 2019 (Doc. 27)("Voltaire Remand Response"). Markham and Voltaire Builders argue that Atchinson and Plumbsquare Construction "did not pull a permit in their name -- the Voltaire Defendants pulled the permit. . . . The Voltaire Defendants performed the work on the property and received payments -- they are the only proper party to this action." Voltaire Remand Response at 1-2. Markham and Voltaire Builders assert that they do not represent or know Barrientos, and they admit that their counsel "inadvertently filed in state court an incorrect draft of the Removal Notice" and is "working to file an errata to correct that error." Voltaire Remand Response at 2. Markham and Voltaire Builders aver that they and Barrientos are "adverse in a separate matter closely related to the matter at bar in this Court, but that Barrientos indicated in a written statement filed in another proceeding that he had been in discussions with the Plaintiffs in this case." Voltaire Remand Response at 2. See Declaration of Walter Earl Steimel (dated August 14, 2019) ¶ 5, at 4, filed August 14, 2019 (Doc. 27)("Steimel Decl."). Markham and Voltaire Builders "request a hearing on this matter if the Plaintiffs do not immediately withdraw the Barrientos portion of their Motion." Voltaire Remand Response at 2. Markham and Voltaire Builders admit that the Court will not have diversity jurisdiction if it does not dismiss Atchinson and Plumbsquare Construction, and thus they request that the Court dismiss Atchinson and Plumbsquare Construction, and "otherwise disregard the false claims made by Plaintiffs with regard to Barrientos and retain this case in federal court." Voltaire Remand Response at 2-3.

7.    **The Remand Reply.**

The Baileys replied to the Plumbsquare Remand Response and the Voltaire Remand Response on August 28, 2019. See Plaintiffs' Reply to Defendants' Opposition to Plaintiffs' Motion to Remand the Case to State Court, filed August 28, 2019 (Doc. 30)("Remand Reply"). The Baileys first note that "[t]here is no dispute that the parties as constituted are not diverse for purposes of diversity jurisdiction." Remand Reply at 1. The Baileys further note that Markham and Voltaire Builders do not cite any authorities in the Voltaire Remand Response. See Remand Reply at 2. The Baileys argue that Markham and Voltaire Builders' reliance on the MTD Response is "misplaced" and "legally insufficient," because the "burden of proof here is far greater than the standard for a motion to dismiss under Rule 12." Remand Reply at 2-3. The Baileys contend that defendants "who remove a case despite the presence of non-diverse parties bear 'a heavy burden' that requires they 'demonstrate that there is no possibility that [plaintiff] would be able to establish a cause of action against [the joined party] in state court.'" Remand Reply at 3 (quoting Bio-Tec Envtl., LLC v. Adams, 792 F. Supp. 2d at 1214)(alterations in Remand Reply). According to the Baileys, "in evaluating a claim of fraudulent joinder, the Court 'must initially resolve all disputed questions of fact and all ambiguities in the controlling law in favor of the non-moving party.'" Remand Reply at 3 (quoting Bio-Tec Envtl., LLC v. Adams, 792 F. Supp. 2d at 1215).

The Baileys aver that, "if dismissal requires the Court to engage in an intricate analysis of state law, the removing party has failed to prove fraudulent joinder." Remand Reply at 3 (citing Montano v. Allstate Indem., 211 F.3d 1278, 2000 WL 525592, at *2 ("This standard is more exacting than that for dismissing a claim under Fed. R. Civ. P. 12(b)(6); indeed, the latter entails the kind of merits determination that, absent fraudulent joinder, should be left to the state court where the action was commenced." (emphasis omitted))). The Baileys say that, "in light of the

Motion to Remand, this Court should consider the Motion to Dismiss only to first see if it involves an intricate analysis of state law." Remand Reply at 3. According to the Baileys, "it is incorrect for Defendants to suggest the Court could consider and rule upon the Motion to Dismiss before or apart from its consideration of the Plaintiffs' Motion to Remand." Remand Reply at 4. The Baileys contend that, "resolving 'all disputed questions of fact and all ambiguities in the controlling law in favor of the non-removing party,' as required (and there is, in fact, no precedential and controlling state law on point here), the intricate state law analysis left mandates this case be remanded." Remand Reply at 4 (quoting Bio-Tec Envtl., LLC v. Adams, 792 F. Supp. 2d at 1215). The Baileys argue that the legal question in this case -- whether Atchinson and Plumbsquare Construction may be held jointly and severally liable along with the other Defendants -- "has not been precedentially settled by the New Mexico appellate courts," and thus the Defendants "cannot prove that 'there is *no possibility* of recovery by the plaintiff.'" Remand Reply at 4 (quoting Bio-Tec Envtl., LLC v. Adams, 792 F. Supp. 2d at 1216)(emphasis in Remand Reply and not in Bio-Tec Envtl., LLC v. Adams).

The Baileys next argue that Markham and Voltaire Builders "*factually* argued that they do not represent Defendant Barrientos, but did not dispute that they *legally* entered an appearance on his behalf." Remand Reply at 2 (emphasis in original). The Baileys assert that Markham and Voltaire Builders entered an appearance on Barrientos' behalf and never modified the entry. See Remand Reply at 2. According to the Baileys, Markham and Voltaire Builders do not dispute "that the State Court filing for Barrientos legally constituted an entry of appearance on his behalf." Remand Reply at 4. The Baileys note that Markham and Voltaire Builders "represented to the Court that an errata would be filed," but the Baileys say they "are not aware of any such errata filing having been made or filed." Remand Reply at 5 (citing Remand Response at 2). The Baileys

argue that the "Defendants must obtain unanimous consent to removal from each Defendant no later than the date on which the defendant had to file notice of removal in order for the removal to be effective." Remand Reply at 5 (citing 28 U.S.C. § 1446(b)(2)). According to the Baileys, "Barrientos' failure to consent within 30 days of a full entry of appearance renders Voltaire Defendants' Notice of Removal fatally defective." Remand Reply at 5. The Baileys conclude by arguing that the case must be remanded, because the "Court was and is without subject matter jurisdiction." Remand Reply at 6. The Baileys also "renew their request for an Order remanding the case to New Mexico State District Court, together with just costs and actual expenses including attorney's fees incurred as a result of the removal, and with such other and further relief as the Court deems just and proper." Remand Reply at 6.

8.    **The September 6, 2019, Hearing.**

The Court held a hearing on September 6, 2019. See Tr. at 1. The Court asked the Baileys if Barrientos had been served, and they responded that "there had been no formal service," as they could not locate Barrientos. Tr. at 2:20-21 (McKelvy). The Baileys noted that Markham and Voltaire Builders "entered an appearance on his behalf when they filed the notice of . . . removal in state court" and "requested relief on his behalf." Tr. at 2:24-25:3 (McKelvy). The Baileys argued that the entry of appearance "constitutes a waiver of any defects in service." Tr. at 3:10 (McKelvy). Markham and Voltaire Builders responded that they "file[d] a document that indicated that we were going to represent Mr. Barrientos, however that document was incorrectly filed." Tr. at 4:5-7 (Ragsdale). Markham and Voltaire Builders' counsel said that they have never communicated with Barrientos and that they "intend to file a notice of errata if we need to to indicate to the Court, to the state court and to the federal court that we only represent Steve Markham and Voltaire Builders, Inc." Tr. at 4:9-13 (Ragsdale). Markham and Voltaire Builders'

counsel stated that they "intend to cure [the] error and move forward representing only Mr. Markham and Voltaire Builders."  Tr. at 4:23-24 (Ragsdale).  Asked how the error occurred, Markham and Voltaire Builders' counsel responded that, when they first discussed representing Markham and Voltaire Builders, they were

> under the impression that Mr. Barrientos was on the same page as we were.  We prepared one entry of appearance.  As time progressed, we learned that we were not all on the same page.  And therefore we prepared another one indicating [] that we were going to be representing Mr. Markham and Voltaire Builders only and the wrong document was filed. . . .  So we have no intent to represent him going forward in any lawsuit.

Tr. at 5:9-21 (Ragsdale).

The Court next turned to the Motion to Remand and the Motion to Dismiss.  See Tr. at 6:1-2 (Court).  The Court said that "it looks like we can argue these things together because they're closely related, so I'm inclined to take up the motion to remand which I think built into it is the issue of whether the plaintiffs state a claim against Mr. Atchinson and Plumbsquare."  Tr. at 6:2-7 (Court).  The Court stated that its initial conclusion is that Atchinson and Plumbsquare Construction had not established fraudulent joinder.  See Tr. at 6:7-10 (Court).  The Court said that "there is enough meat on the bones here that I probably ought to send this back to the state court, because it looks like it's got enough of a meaty issue."  Tr. at 6:10-13 (Court).  The Court also said that it is not sure that its Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938)("Erie")[3]

---

[3]Under the Erie doctrine, federal courts sitting in diversity must apply the substantive law of the state that would otherwise have jurisdiction over the claims at issue.  See Erie, 304 U.S. at 78; Gasperini v. Ctr. for Humanities, Inc., 518 U.S. 415, 427 (1996).  In the absence of an authoritative pronouncement from the highest court, a federal court's task under the Erie doctrine is to predict how the state's highest court would rule if presented with the same case.  See Wade v. EMCASCO Ins. Co., 483 F.3d 657, 666 (10th Cir. 2007).  The federal court "must follow the decisions of intermediate state courts in the absence of convincing evidence that the highest court of the state would decide differently."  Stoner v. N.Y. Life Ins. Co., 311 U.S. 464, 467 (1940).  To predict how the state's highest court would rule, the federal court "may seek guidance from

prediction "of what the Supreme Court [of New Mexico] would do would line-up with what" the Court of Appeals of New Mexico did in S & H Dev., LLC v. Parker, which is an unpublished opinion.  Tr. at 6:18-20 (Court).  The Court expressed that the law's uncertainty and unsettled nature "tell[] me there is enough of an issue there that I shouldn't say that there has been fraudulent joinder."  Tr. at 6:21-22 (Court).

The Baileys summarized the case's background:

> [T]his was a construction contract entered into by the plaintiffs with Mr. Markham and Voltaire Builders. . . .  There was a breach of contract.  There was a restitution claim, because under the construction industry licensing act an unlicensed contractor cannot engage in contracting work but is not entitled to even keep proceeds even if the work was expertly done.  Plumbsquare, and Mr. Atchinson were licensed parties that the plaintiffs were not aware of[,] [b]ut who facilitated this illegal contracting and used Mr. Atchinson's license to pull the permit for this work.  So the plaintiffs initially sued all of the defendants in state court in Chaves County in May of this year, right about the time the answer was due Mr. Markham and Voltaire Builders filed a notice of removal alleging fraudulent joinder.

Tr. at 8:4-21 (McKelvy).  The Baileys argued that the burden of proof falls on Markham and Voltaire Builders to establish fraudulent joinder.  See Tr. at 9:5-8 (McKelvy).  According to the Baileys, Markham and Voltaire Builders "must demonstrate there is no possibility that a plaintiff would be able to establish a cause of action against the joined party in state court."  Tr. at 9:5-8 (McKelvy)(citing Bio-Tec Envtl., LLC v. Adams, 792 F. Supp. 2d at 1214).  The Baileys argued that the fraudulent-joinder standard is higher than the motion-to-dismiss standard, and thus they contend that "the Court can't really consider the motion to dismiss in isolation, but must consider the motion to dismiss to see if it does involve an intricate analysis of case law, which as the Court

---

decisions rendered by lower courts in the relevant state, appellate decisions in other states with similar legal principles, district court decisions interpreting the law of the state in question, and the general weight and trend of authority in the relevant area of law."  Wade v. EMCASCO Ins. Co., 483 F.3d at 666 (citations and internal quotation marks omitted).

has seemed to recognize it does." Tr. at 9:9-13 (McKelvy). The Baileys asserted that <u>S & H Dev., LLC v. Parker</u> is "essentially the only case or the only legal basis for the dismissal request." Tr. at 9:14-16 (McKelvy). The Baileys stressed that, because <u>S & H Dev., LLC v. Parker</u> is an unpublished opinion, it is "not precedential" and "not controlling authority." Tr. at 10:4-5 (McKelvy). The Baileys said that, in <u>S & H Dev., LLC v. Parker</u>, the Court of Appeals of New Mexico "limited" its decision to the "specific facts" and "unusual circumstances" in the case. Tr. at 11:2-4 (McKelvy). According to the Baileys, when there is no "clear controlling precedent" on a state law issue, "federal courts typically defer . . . because there could be further review by the state appellate courts who are in a better position to deal with those state issues." Tr. at 10:10-14 (McKelvy). The Baileys contended that the "Court must initially resolve all disputed questions of fact and all ambiguities in the controlling law in favor of the non removing party." Tr. at 12:3-5 (McKelvy). The Baileys argued that, in responding to the Motion to Remand, Markham and Voltaire Builders relied on the Motion to Dismiss and did not distinguish the cases on which the Baileys rely or dispute the fact that <u>S & H Dev., LLC v. Parker</u> is non-precedential. <u>See</u> Tr. at 12:21-13:7 (McKelvy).

Turning to the Notice of Removal, the Baileys argued that 28 U.S.C. § 1446 requires that a defendant file a Notice of Removal in federal court and give notice of the Notice of Removal in state court. <u>See</u> Tr. at 14:1-6 (McKelvy). The Baileys averred that Markham and Voltaire Builders' notice in state court "was legally entered on behalf of Mr. Barrientos," and "more than 30 days passed without Mr. Barrientos filing a notice of consent to the notice of removal in the federal court." Tr. at 14:8-20 (McKelvy). According to the Baileys, "the notice that was filed in state court only [says] . . . [that the Notice of Removal] has been filed and [] request[s] that the state court be stayed," but the Notice of Removal in federal court says that Barrientos is "not

required to consent." Tr. at 15:4-9 (McKelvy). The Baileys added that "there has been no consent by Mr. Barrientos and 30 days have lapsed." Tr. at 15:15-16 (McKelvy). The Baileys argued that, although Barrientos was never formally served, the state court "entry of appearance constitutes a waiver of any defects in service." Tr. at 15:23-24 (McKelvy). The Baileys concluded that the alternate basis for granting remand "is that there was no consent by all the parties to the action within 30 days as required." Tr. at 16:9-11 (McKelvy)(citing Zambrano v. N.M. Corrections Dep't, 256 F. Supp. at 1185).

Markham and Voltaire Builders agreed with the Baileys that they "punt[ed] back to the Atchinson's motion to dismiss." Tr. at 18:15-16 (Ragsdale). Markham and Voltaire Builders said that their "position is that [Atchinson and Plumbsquare Construction] had nothing to do with Mr. Bailey; Mr. Atchinson has never met Mr. Bailey. He had no contract with him whatsoever. So therefore there [] is no possibility of a claim against him." Tr. at 18:18-22 (Ragsdale). Markham and Voltaire Builders also noted that they base their argument on S & H Dev., LLC v. Parker. See Tr. at 18:22-19:2 (Ragsdale).

Atchinson and Plumbsquare Construction said that they do not take a position on the Motion to Remand, because "the motion to dismiss was filed prior the case being removed to this Court and was just sort of refiled here." Tr. at 19:12-15 (Calvert). According to Atchinson and Plumbsquare Construction, the primary question is the "relation between" the Motion to Dismiss and the Motion to Remand. Tr. at 19:16 (Calvert). Atchinson and Plumbsquare Construction asked that the Court remand the case "to state court for the state court to deal with the motion to dismiss," if the Court is uncertain about the Motion to Dismiss. Tr. at 19:19-21 (Calvert). The Court asked Markham and Voltaire Builders whether they would be comfortable being in state court, and they responded that "the claims should be in federal court," because the claims are

"related to another claim that Mr. Markham filed in a Texas Court" and "should be joined" with the separate Texas claim.  Tr. at 20:4-9 (Ragsdale).  Atchinson and Plumbsquare Construction said they "would like a decision one way [or] the other."  Tr. at 20:21-22 (Calvert).

The Court said it would probably decide the issue -- whether Atchinson and Plumbsquare Construction may be held jointly and severally liable along with the other Defendants -- and if the Court decides there is fraudulent joinder, then it will grant the Motion to Dismiss and keep the case.  See Tr. at 20:23-21:5 (Court).  The Court noted, however, that, if the Court decides that the issue entails "enough complexity," then the Court will probably remand the case back to the state court, where the state court judges are "free to ignore" the Court's analysis, "but at least [the Court will] give it a good shot."  Tr. at 21:16-17 (Court).  The Court explained that it is "hard to decide the fraudulent joinder [issue] in a really intellectually honest way without delving into the [state law] issue" whether Atchinson and Plumbsquare Construction may be held jointly and severally liable along with the other Defendants.  Tr. at 21:20-23 (Court).

Atchinson and Plumbsquare Construction argued that the plaintiffs in S & H Dev., LLC v. Parker "raised the same claims that [the Baileys] are raising here."  Tr. 22:25-23:1 (Calvert). Atchinson and Plumbsquare Construction reiterated that the Court of Appeals of New Mexico said the Construction Industries Licensing Act provides no basis for the claims.  See Tr. at 23:1-2 (Calvert).  According to Atchinson and Plumbsquare Construction, based on S & H Dev., LLC v. Parker, the penalty for a licensed contractor aiding an unlicensed contractor is a "fine and potential action against the licensed [contractor's] license.  Not a private right of action."  Tr. at 24:1-3 (Calvert).  Atchinson and Plumbsquare Construction also argued that S & H Dev., LLC v. Parker is not the "sole basis for the motion to dismiss."  Tr. at 24:7 (Calvert).

Plumbsquare keeps coming back to the basic law in New Mexico that in order for make the conspiracy claim that plaintiff is making, the [New Mexico courts] are consistent that there has to be [a] separate independent unlawful act by Plumbsquare and Atchinson that resulted in harm to the plaintiffs. Plaintiffs' complaint does not allege any separate act. So regardless of the decision in [S & H Dev., LLC v. Parker], our position is the complaint on its face does not state any separate act. It just ties all the acts to Voltaire Builders and Markham, and then says they used [Plumbsquare's] license. . . . There isn't any fact stated or pled in the complaint that [alleges] any separate act by Plumbsquare or Atchinson that would give rise to a civil claim by plaintiffs against Plumbsquare and Atchinson and absent a separate wrong, the Court in [Ettenson v. Burke] and others have said there is no civil conspiracy. You can't bring that claim, which is the only claim against Plumbsquare and Atchinson absent a pleading alleging some separate act for which they would have a cause of action in and of itself. So [S & H Dev., LLC v. Parker] is nice in that it fits factually but we don't believe it's necessary for a decision that the complaint doesn't state that separate cause of action or separate act by Plumbsquare and Atchinson. In fact, [the Complaint] goes fairly far the other direction in alleging that there was absolutely no involvement by Plumbsquare or Atchinson in the contract, in any of the negotiations, . . . and that plaintiffs weren't even aware of Plumbsquare and Atchinson until later when they . . . found out that Voltaire had pulled the permit in the name of Atchinson and Plumbsquare. So Your Honor we believe we're entitled to be dismissed [because the] complaint does not allege that separate cause of action or separate act by Plumbsquare and Atchinson, and I think [S & H Dev., LLC v. Parker] supports that. But obviously, Your Honor all Plumbsquare and if Atchinson are interested in is getting to that issue and whether it's here or in state Court other than additional time and effort doesn't matter.

Tr. at 24:9-25:25 (Calvert).

The Baileys countered that "New Mexico jurisprudence is replete with instances where there is a statutory remedy and an implied right of action is allowed so I don't think we can just conclude that [the Construction Industries Licensing Act lacks a private right of action] from the statute itself." Tr. at 26:22-27:1 (McKelvy). The Baileys reiterated that, in S & H Dev., LLC v. Parker, the Court of Appeals of New Mexico "distinguished some other authorities that might authorize applying a private right of action . . . based upon what the Court [of Appeals of New Mexico] observed as, quote, 'peculiar circumstances considerably different from the circumstances here.'" Tr. at 27:7-13 (McKelvy)(quoting S & H Dev., LLC v. Parker, 2017 WL

3485065, ¶ 9, at *4).  The Baileys agreed with Atchinson and Plumbsquare Construction that they did not know about Atchinson and Plumbsquare Construction's relationship with Markham and Voltaire Builders, and the Baileys argued that they would "like to discover what the extent of their involvement was," and whether "there was a pattern that this was done more than once by Mr. Atchinson and Plumbsquare."  Tr. at 27:20-28:3 (McKelvy).  The Baileys noted that the parties in S & H Dev., LLC v. Parker were allowed to conduct discovery.  See Tr. at 28:3-5 (McKelvy).  The Baileys also argued that there is no "indication that Plumbsquare didn't even know that their name or their license was being used on this application to facilitate something that was illegal."  Tr. at 28:6-8 (McKelvy).  The Baileys reiterated that, in S & H Dev., LLC v. Parker, the "record was different," and the Court of Appeals of New Mexico "felt compelled to quote 'clarify [Plaintiff's] unclear arguments on appeal.'"  Tr. at 28:15-16 (McKelvy)(quoting S & H Dev., LLC v. Parker, 2017 WL 3485065, ¶ 8, at *4)(internal quotation marks and alteration added).  According to the Baileys, in S & H Dev., LLC v. Parker, the plaintiff's theories of tort liability "'were not pleaded in [the] complaint as independent tort claims,'" and the Court of Appeals of New Mexico concluded that the plaintiff "'has not shown that it preserved tort theories of recovery separate from [Plaintiff's] claim [of] violation of the Act.'"  Tr. at Tr. at 28:16-21 (McKelvy)(quoting S & H Dev., LLC v. Parker, 2017 WL 3485065, ¶ 8, at *4)(internal quotation marks and alteration added).

The Baileys argued that, in contrast to the plaintiff in S & H Dev., LLC v. Parker, they "have alleged civil conspiracy and we have alleged that a joint venture occurred.  We've also mentioned and argued that fraud or fraudulent inducement are claims that are supported under the facts that we currently have alleged."  Tr. at 28:22-29:1 (McKelvy).  The Baileys added that they do not "know what remuneration Plumbsquare and Mr. Atchinson received in return for the use of

their license that facilitated this illegal contract because by all accounts it wouldn't have happened if they were not able to get the permit under the license of those defendants." Tr. at 29:4-10 (McKelvy). The Baileys argued that there are factual issues to be developed, and thus the Court should not "conclude that there is no possibility under any circumstances or any claims, tort or otherwise, that the plaintiffs could state claims against Plumbsquare and Mr. Atchinson." Tr. at 29:12-15 (McKelvy). The Baileys reiterated that the Court should deny the Motion to Dismiss and grant the Motion to Remand, "because of the factual issues that exist, [and] because of the intricate analysis of the state law that would be required to even do that." Tr. at 29:18-21 (McKelvy). The Baileys argued that the Court should remand the case, because Markham and Voltaire have not "carried their burden" to establish proper removal despite the lack of complete diversity, and that, "if the Court is to reach the motion to dismiss," the Court should deny it. Tr. at 30:6-8 (McKelvy).

Atchinson and Plumbsquare Construction countered that, although the Baileys allege civil conspiracy, they do not "allege any separate action as required by [Ettenson v. Burke]." Tr. at 30:23-24 (Calvert). Next, Atchinson and Plumbsquare Construction argued that, in S & H Dev., LLC v. Parker, "the facts are almost identical to the current [case], and actually more damning." Tr. at 31:4-6 (Calvert). According to Atchinson and Plumbsquare Construction, the licensed contractor and the unlicensed contractor in S & H Dev., LLC v. Parker knew each other, the licensed contractor "allowed the unlicensed contractor to use its license," and the Court of Appeals of New Mexico "still found that there was no cause of action against the . . . licensed contractor." Tr. at 31:9-17 (Calvert). Atchinson and Plumbsquare Construction also emphasized that the Construction Industries Licensing Act's "remedy is against the unlicensed contractor," so the Baileys "have a full and complete remedy against Voltaire." Tr. at 31:17-23 (Calvert).

At the conclusion of the hearing, the Court stated that it still is inclined to grant the Motion to Remand. See Tr. at 31:25-32:2 (Court). The Court said that it will discuss the issues that the Motion to Dismiss raise, but it

> probably won't decide the motion to dismiss. But I probably will analyze, because I think it's necessary to try to make an informed decision of how difficult the issue is for fraudulent joinder, so I probably will give you my thoughts as to what I think the New Mexico law is, but I probably will not find that I [] have jurisdiction to actually grant the motion to dismiss. So that's what I'm leaving here intending to do.

Tr. at 32:5-12 (Court). The parties confirmed that there is nothing else they wish to discuss, and the Court said it would write an opinion as soon as possible. See Tr. at 33:11-34:4 (Court, McKelvy, Calvert).

## LAW REGARDING SUBJECT-MATTER JURISDICTION

It is a fundamental precept of American law that the federal courts are "courts of limited jurisdiction." Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 552 (2005). Federal courts "possess only that power authorized by Constitution and statute." Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). Among the powers that Congress has bestowed upon the courts is the power to hear controversies arising under federal law -- federal-question jurisdiction -- and controversies arising between citizens of different states -- diversity jurisdiction. See 28 U.S.C. §§ 1331, 1332.

Pursuant to rule 12(h)(3) of the Federal Rules of Civil Procedure, "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). Objection to a federal court's subject-matter jurisdiction "may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment." Arbaugh v. Y & H Corp., 546 U.S. 500, 506 (2006). See Kontrick v. Ryan, 540

U.S. 443, 455 (2004)("A litigant generally may raise a court's lack of subject-matter jurisdiction at any time in the same civil action, even initially at the highest appellate instance."); Mansfield, Coldwater & Lake Mich. Ry. v. Swan, 111 U.S. 379, 382 (1884)(holding that the nature and limits of federal judicial power require the court to raise the issue of subject-matter jurisdiction sua sponte).

Whenever the court lacks jurisdiction of the subject matter involved in an action, the court must dismiss the action. See Tuck v. U.S. Auto. Ass'n, 859 F.2d 842, 844 (10th Cir. 1988). The party seeking the exercise of jurisdiction bears the burden of establishing jurisdiction and "must allege in his pleading the facts essential to show jurisdiction." United States ex rel. Gen. Rock & Sand Corp. v. Chuska Dev. Corp., 55 F.3d 1491, 1495 (10th Cir. 1995)(citation and internal quotations omitted). In determining whether a party has adequately presented facts sufficient to establish jurisdiction, the court should look to the complaint's face, see Whitelock v. Leatherman, 460 F.2d 507, 514 (10th Cir. 1972), accepting the well-pleaded factual allegations as true, see United States v. Rodriguez-Aguirre, 264 F.3d 1195, 1203 (10th Cir. 2001), but ignoring conclusory allegations of jurisdiction, see Groundhog v. Keeler, 442 F.2d 674, 677 (10th Cir. 1971). "[D]ismissals for lack of jurisdiction should be without prejudice because the court, having determined that it lacks jurisdiction over the action, is *incapable* of reaching a disposition on the merits of the underlying claims." Brereton v. Bountiful City Corp., 434 F.3d 1213, 1218 (10th Cir. 2006)(emphasis in original).

## LAW REGARDING DIVERSITY JURISDICTION

"Subject-matter jurisdiction under 28 U.S.C. § 1332(a)(1) requires: (i) complete diversity among the parties; and (ii) that 'the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.'" Thompson v. Intel Corp., No. CIV 12-0620 JB/LFG, 2012 WL

3860748, at *12 (D.N.M. Aug. 27, 2012)(Browning, J.)(citing 28 U.S.C. § 1332(a)). As the Court has previously explained, "[t]he Supreme Court of the United States has described this statutory diversity requirement as 'complete diversity,' and it is present only when no party on one side of a dispute shares citizenship with any party on the other side of a dispute." McEntire v. Kmart Corp., No. CIV 09-0567, 2010 WL 553443, at *3 (D.N.M. Feb. 9, 2010)(Browning, J.)(citing Strawbridge v. Curtiss, 7 U.S. (3 Cranch) 267, 267-68 (1806), overruled in part by Louisville & N.R. Co. v. Mottley, 211 U.S. 149 (1908); McPhail v. Deere & Co., 529 F.3d 947, 951 (10th Cir. 2008)). The amount-in-controversy requirement is an "estimate of the amount that will be put at issue in the course of the litigation." Valdez v. Metro. Prop. & Cas. Ins. Co., 867 F. Supp. 2d 1143, 1163 (D.N.M. 2012)(Browning, J.)(citing McPhail v. Deere & Co., 529 F.3d at 956). The Court will discuss the two requirements in turn.

### 1. **Diversity of Citizenship.**

For diversity jurisdiction purposes, a person's domicile determines citizenship. See Crowley v. Glaze, 710 F.2d 676, 678 (10th Cir. 2013). "A person's domicile is defined as the place in which the party has a residence in fact and an intent to remain indefinitely, as of the time of the filing of the lawsuit." McEntire v. Kmart Corp., 2010 WL 553443, at *12 (citing Crowley v. Glaze, 710 F.2d at 678). See Freeport-McMoRan, Inc. v. KN Energy, Inc., 498 U.S. 426, 428 (1991)("We have consistently held that if jurisdiction exists at the time an action is commenced such jurisdiction may not be divested by subsequent events."). If neither a person's residence nor the location where the person has an intent to remain can be established, the person's domicile is that of his or her parents at the time of the person's birth. See Gates v. Comm'r of Internal Revenue, 199 F.2d 291, 294 (10th Cir. 1952)("[T]he law assigns to every child at its birth a domicile of origin. The domicile of origin which the law attributes to an individual is the domicile

of his parents. It continues until another domicile is lawfully acquired."). Additionally, "while residence and citizenship are not the same, a person's place of residence is prima facie evidence of his or her citizenship." McEntire v. Kmart Corp., 2010 WL 553443, at *3 (citing State Farm Mut. Auto. Ins. Co. v. Dyer, 19 F.3d 514, 520 (10th Cir. 1994)). As for corporations, on the other hand, the "federal diversity jurisdiction statute provides that 'a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business.'" Hertz Corp. v. Friend, 559 U.S. 77, 81 (2010)(quoting 28 U.S.C. § 1332(c)(1))(emphasis in Hertz Corp. v. Friend omitted).

## 2.      **Amount in Controversy.**

The statutory amount-in-controversy requirement, which presently stands at $75,000.00, must be satisfied as between a single plaintiff and a single defendant for a federal district court to have original jurisdiction over the dispute; "a plaintiff cannot aggregate independent claims against multiple defendants to satisfy the amount-in-controversy requirement," nor can multiple plaintiffs aggregate their claims against a single defendant to exceed the threshold. Martinez v. Martinez, No. CIV 09-0281 JB/KBM, 2010 WL 1608884, at *18 (D.N.M. March 30, 2010)(Browning, J.). If multiple defendants are jointly liable, or jointly and severally liable, on some of the claims, however, the amounts of those claims may be aggregated to satisfy the amount-in-controversy requirement as to all defendants jointly liable for the claims. See Alberty v. W. Sur. Co., 249 F.2d 537, 538 (10th Cir. 1957); Martinez v. Martinez, 2010 WL 1608884, at *18. Similarly, multiple plaintiffs may aggregate the amounts of their claims against a single defendant if the claims are not "separate and distinct." Martin v. Franklin Capital Corp., 251 F.3d 1284, 1292 (10th Cir. 2001), abrogated on other grounds by Dart Cherokee Basin Operating Co. v Owens, 574 U.S. 81 (2014). Multiple claims by the same plaintiff against the same defendant may be aggregated, even

if the claims are entirely unrelated. See 14AA C. Wright & A. Miller, Federal Practice & Procedure § 3704, at 566-95 (4th ed. 2011). If a single plaintiff -- regardless whether he or she is the only plaintiff who will share in the recovery -- can recover over $75,000.00 from a single defendant -- regardless whether the defendant has jointly liable co-defendants -- then the court has original jurisdiction over the dispute between that plaintiff and that defendant. The court can then exercise supplemental jurisdiction over other claims and parties that "form part of the same case or controversy under Article III," 28 U.S.C. § 1367(a), meaning that they "derive from a common nucleus or operative fact." United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 725 (1996).

"In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." Hunt v. Wash. State Apple Adver. Comm'n, 432 U.S. 333, 347 (1977). The United States Court of Appeals for the Tenth Circuit follows the "either viewpoint rule," which considers either the value to the plaintiff, or the cost to the defendant of injunctive and declaratory relief, as the measure of the amount in controversy. Lovell v. State Farm Mut. Auto. Ins. Co., 466 F.3d 893, 897 (10th Cir. 2006).

Satisfaction of the amount-in-controversy requirement must be established by a preponderance of the evidence. See McPhail v. Deere & Co., 529 F.3d at 953. In the context of establishing an amount-in-controversy, the defendant seeking removal could appear to be bound by the plaintiff's chosen amount of damages in the complaint, which would seem to allow a plaintiff to avoid federal jurisdiction "merely by declining to allege the jurisdictional amount [in controversy]." McPhail v. Deere & Co., 529 F.3d at 955.[4] The Tenth Circuit's decision in McPhail

---

[4]New Mexico court rules provide that, "[u]nless it is necessary allegation of the complaint, the complaint shall not contain an allegation for damages in any specific monetary amount." N.M. Rule Ann. 1-008(A)(3). See Aranda v. Foamex Int'l, 884 F. Supp. 2d 1186, 1205 (D.N.M. 2012) (Browning, J.)(noting that, because a complaint filed in New Mexico state court is not supposed

v. Deere & Co. has foreclosed such an option from a plaintiff who wishes to remain in state court. McPhail v. Deere & Co. holds that a defendant's burden in establishing jurisdictional facts is met if the defendant proves "jurisdictional facts that make it possible that $75,000 is in play." 529 F.3d at 955.

The Supreme Court recently clarified that a defendant seeking removal to federal court need only include in the notice of removal a plausible allegation that the amount in controversy exceeds the jurisdictional threshold. See Dart Cherokee Basin Operating Co., LLC v. Owens, 574 U.S. at 89. The district court should consider outside evidence and find by a preponderance of the evidence whether the amount in controversy is satisfied "only when the plaintiff contests, or the court questions, the defendant's allegation." Dart Cherokee Basin Operating Co., LLP v. Owens, 574 U.S. at 89.

## LAW REGARDING RULE 12(b)(6)

Rule 12(b)(6) authorizes a court to dismiss a complaint for "failure to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." Mobley v. McCormick, 40 F.3d 337, 340 (10th Cir. 1994)(citing Williams v. Meese, 926 F.2d 994, 997 (10th Cir. 1991)). The sufficiency of a complaint is a question of law, and when considering a rule 12(b)(6) motion, a court must accept as true all well-pleaded factual allegations in the complaint, view those allegations in the light most favorable to the non-moving party, and draw all reasonable inferences in the plaintiff's favor. See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322-23 (2007)("[O]nly '[i]f a reasonable person could not

---

to allege the amount of damages, "the Court will therefore look to the allegations in the Notice of Removal . . . to determine the amount in controversy").

draw . . . an inference [of plausibility] from the alleged facts' would the defendant prevail on a motion to dismiss."  (second alteration in Tellabs, Inc. v. Makor Issues & Rights, Ltd.)(quoting Makor Issues & Rights, Ltd. v. Tellabs, Inc, 437 F.3d 588, 602 (7th Cir. 2006))); Smith v. United States, 561 F.3d 1090, 1098 (10th Cir. 2009)("[F]or purposes of resolving a Rule 12(b)(6) motion, we accept as true all well-pleaded factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff."  (citing Moore v. Guthrie, 438 F.3d 1036, 1039 (10th Cir. 2006))).

A complaint need not set forth detailed factual allegations, yet "[a] pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action'" is insufficient.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)(quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 556 U.S. at 678.  "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  Bell Atl. Corp. v. Twombly, 550 U.S. at 555 (citations and footnote omitted).

To survive a motion to dismiss, a plaintiff's complaint must contain sufficient "facts that, if assumed to be true, state a claim to relief that is plausible on its face."  Mink v. Knox, 613 F.3d 995, 1000 (10th Cir. 2010)(citing Ashcroft v. Iqbal, 556 U.S. at 678).  See Bell Atl. Corp. v. Twombly, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 556).  "Thus, the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complainant must give the court reason

to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007)(emphasis omitted). The Tenth Circuit has stated:

> "[P]lausibility" in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs "have not nudged their claims across the line from conceivable to plausible." The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief.

Robbins v. Okla., 519 F.3d 1242, 1247 (10th Cir. 2008)(McConnell, J.)(citation omitted)(quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 570).

Although affirmative defenses must generally be pled in the defendant's answer, not argued on a motion to dismiss, see Fed. R. Civ. P. 8(c), there are exceptions. First, a defendant can argue an affirmative defense on a motion to dismiss where the defendant asserts an immunity defense -- the courts handle these cases differently than other motions to dismiss. See Robbins v. Oklahoma, 519 F.3d at 1247; Glover v. Gartman, 899 F. Supp. 2d 1115, 1137-39, 1141 (D.N.M. 2012)(Browning, J.)(citing Pearson v. Callahan, 555 U.S. 223 (2009)). Second, the defendant can raise the defense on a motion to dismiss where the facts establishing the affirmative defense are apparent on the complaint's face. See Miller v. Shell Oil Co., 345 F.2d 891, 893 (10th Cir. 1965)("Under Rule 12(b), . . . a defendant may raise an affirmative defense by a motion to dismiss for the failure to state a claim. If the defense appears plainly on the face of the complaint itself, the motion may be disposed of under this rule."). The defense of limitations is the affirmative defense that the complaint's uncontroverted facts is most likely to establish. See 5 Charles Alan Wright et al., Federal Practice and Procedure: Civil § 1277, at 643 (3d ed. 2004). If the complaint sets forth dates that appear, in the first instance, to fall outside of the statutory limitations period, then the defendant may move for dismissal under rule 12(b)(6). See Rohner v. Union Pac. R.R.

Co., 225 F.2d 272, 273-75 (10th Cir. 1955); Gossard v. Gossard, 149 F.2d 111, 113 (10th Cir. 1945); Andrew v. Schlumberger Tech. Co., 808 F. Supp. 2d 1288, 1292 (D.N.M. 2011)(Browning, J.).

## LAW REGARDING REMOVAL AND REMAND

If a civil action filed in state court satisfies the requirements for original federal jurisdiction -- meaning, most commonly, federal-question or diversity jurisdiction -- the defendant may invoke 28 U.S.C. § 1441(a) to remove the action to the federal district court "embracing the place where such action is pending." 28 U.S.C. § 1441(a). See Huffman v. Saul Holdings LP, 194 F.3d 1072, 1076 (10th Cir. 1999)("When a plaintiff files in state court a civil action over which the federal district courts would have original jurisdiction based on diversity of citizenship, the defendant or defendants may remove the action to federal court . . . .")(quoting Caterpillar Inc. v. Lewis, 519 U.S. 61, 68 (1996)). In a case with multiple defendants, there must be unanimous consent to removal; any one defendant may spoil removal and keep the case in state court. See 28 U.S.C. § 1446(b)(2)(A). Only true defendants have removal rights: plaintiffs defending counterclaims and third-party defendants may not remove an action,[5] and their consent is not

---

[5]This view is well-established with regard to plaintiffs defending counterclaims, but is an open question in the Tenth Circuit with regard to third-party plaintiffs. The better view, and the majority view, however, is that "defendants" as used in the removal statute refers to true defendants and not to third-party defendants. The Court wrote in Wiatt v. State Farm Insurance Co., 560 F. Supp. 2d 1068, 1076 (D.N.M. 2007)(Browning, J.):

> With respect to third-party defendants, courts take various views on whether they may remove cases. See NCO Fin. Sys., Inc. v. Yari, 422 F. Supp. 2d 1237, 1239 (D. Colo. 2006)(citing Monmouth-Ocean Collection Serv., Inc. v. Klor, 46 F. Supp. 2d 385 (D.N.J. 1999)). 28 U.S.C. § 1441(a) permits the removal of a civil action of which the district courts of the United States have original jurisdiction "by the defendant or the defendants." The majority view is that third-party defendants are not "defendants" within the meaning of § 1441(a). See First Nat. Bank of Pulaski v. Curry, 301 F.3d 456, 461-62 (6th Cir. 2002); James Wm. Moore,

Moore's Federal Practice § 107.11[1][b][iv] ("[T]hird-party defendants are not *defendants* within the meaning of the removal statute." (emphasis in original)). Other justifications for opposing third-party defendant removal are that it would force a plaintiff to litigate in a federal court that he did not choose and to which his adversary originally could not have removed, and that allowing removal would expand jurisdiction of federal courts in contravention of the strictly construed statutory limits on the right to removal. See NCO Fin. Sys., Inc. v. Yari, 422 F. Supp. 2d at 1239. Proponents of third-party removal, however, assert that the term "defendant" under § 1441(a) does not necessarily exclude third-party defendants, who, like other defendants, have been brought into court involuntarily and may have an interest in having a federal forum.

. . . .

Sister districts within the United States Court of Appeals for the Tenth Circuit have routinely held that third-party defendants that a defendant/third-party plaintiff impleads may not remove cases. See NCO Fin. Sys., Inc. v. Yari, 422 F. Supp. 2d at 1239-40; Menninger Clinic Inc. v. Schilly, No. CIV 92-4104, 1992 WL 373927, at *1-2 (D. Kan. Nov. 23, 1992); Radio Shack Franchise Dep't v. Williams, 804 F. Supp. at 152-53; Elkhart Co-op Equity Exch. v. Day, 716 F. Supp. 1384, 1385, 1387 (D. Kan. 1989)(cross-claim). These cases, however, involved the application of 28 U.S.C. § 1441(c) and not a plaintiff/counter-defendant impleading the third-party defendant under Rule 14(b). Arguably, some of the rationales for opposing third-party defendant removal may not apply where the plaintiff impleads a third-party defendant, because the plaintiff is the party permissively joining the third-party defendant, and in this scenario, the third-party defendant is more like a traditional defendant -- a party antagonistic to the plaintiff. See Moore, supra, § 107.11 [1][b][iv] ("The better view . . . is that third-party claims are not removable, because only a party defending against claims asserted by a plaintiff ought to be able to remove."). At least one court, however, has held that a third-party defendant a plaintiff/counter-defendant impleads cannot remove, because the third-party defendant is not a defendant within the meaning of § 1441. See Garnas v. Am. Farm Equip. Co., 502 F. Supp. 349, 351 n.7 (D.N.D. 1980)(based on pre-1990 amendment to section 1441(c)).

The Tenth Circuit has not spoken definitively on the propriety of third-party removal. See NCO Fin. Sys., Inc. v. Yari, 422 F. Supp. 2d at 1240. It is therefore an open question in this circuit whether a third-party defendant, who the plaintiff impleaded, may remove a case.

Wiatt v. State Farm Insurance Co., 560 F. Supp. 2d at 1076 (citations omitted). The Court ultimately concluded that it "need not resolve this issue, because assuming, without deciding, that a third-party defendant impleaded under rule 14(b) may attempt removal, Allstate has not met its burden to establish the Court's diversity jurisdiction over the claims against it." 560 F. Supp. 2d

required for removal if all the true defendants consent.  See Hamilton v. Aetna Life & Cas. Co., 5

F.3d 642, 643-44 (2d Cir. 1993); Wiatt v. State Farm Ins. Co., 560 F. Supp. 2d 1068 (D.N.M.

2007)(Browning, J.).  "A plaintiff objecting to the removal may file a motion asking the district

court to remand the case to state court."  Huffman v. Saul Holdings LP, 194 F.3d at 1076 (citing

Caterpillar Inc. v. Lewis, 519 U.S. at 69).

To remove a case based on diversity, the diverse defendant must demonstrate that all of the

usual prerequisites of diversity jurisdiction are satisfied.  Under 28 U.S.C. § 1332(a), a federal

district court possesses original subject-matter jurisdiction over a case when the parties are diverse

in citizenship and the amount in controversy exceeds $75,000.00.  See 28 U.S.C. § 1332(a);

Johnson v. Rodrigues, 226 F.3d 1103, 1107 (10th Cir. 2000).  Diversity between the parties must

be complete.  See Caterpillar Inc. v. Lewis, 519 U.S. at 68; Radil v. Sanborn W. Camps, Inc., 384

F.3d 1220, 1225 (10th Cir. 2004).  In addition to the requirements of original jurisdiction,

§ 1441(b)(2) lays out the "forum-defendant rule," which provides that a case may not be removed

on the basis of diversity jurisdiction if any defendant is a citizen of the state in which the state-court

action was brought.  Brazell v. Waite, 525 F. App'x 878, 884 (10th Cir. 2013)(unpublished).[6]  The

Tenth Circuit wrote:

---

at 1078.  In any case, the Court has since held that a third party may not remove a case.  See Mach
v. Triple D Supply, LLC, 773 F. Supp. 2d 1018, 1051 (D.N.M. 2011)(Browning, J.)("The Supreme
Court has already established that cross-defendants may not remand; there is no valid distinction
between cross-defendants, counter-defendants, and third-party defendants for the purposes of
28 U.S.C. § 1441(a).  The Court thus agrees with those courts that have held only original
defendants may remove cases under 28 U.S.C. § 1441(a).").

[6]Brazell v. White is an unpublished opinion, but the Court can rely on an unpublished
opinion to the extent its reasoned analysis is persuasive in the case before it.  See 10th Cir. R.
32.1(A), 28 U.S.C. ("Unpublished decisions are not precedential, but may be cited for their
persuasive value.").  The Tenth Circuit has stated:

> [W]e note that § 1441(b)(2) -- the so-called forum-defendant rule -- provides as a separate requirement that "[a] civil action otherwise removable solely on the basis of [diversity] jurisdiction . . . may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."

Brazell v. Waite, 525 F. App'x at 884 (alteration in original)(quoting 28 U.S.C. § 1441(b)(2)).  See City of Albuquerque v. Soto Enters., Inc., 864 F.3d 1089, 1096 n.11 (10th Cir. 2017)("The forum-defendant rule prohibits removal when a case is removed for diversity jurisdiction and the defendant 'is a citizen of the State in which such action is brought.'" (quoting 28 U.S.C. § 1441(b)(2))).   The forum-defendant rule applies only to cases removed under diversity jurisdiction; a defendant may remove a case brought against it in its home state on the basis of federal-question jurisdiction.  See 28 U.S.C. § 1441(b).  Last, a case cannot be removed if it began with a nondiverse party or forum-citizen defendant, and only later came to satisfy the requirements of removal jurisdiction, unless: (i) the plaintiff voluntarily dismissed the removal-spoiling party, see DeBry v. Transamerica Corp., 601 F.2d 480, 488 (10th Cir. 1979); Flores-Duenas v. Briones, No. CIV 0660, 2013 WL 6503537, at *12 n.6, *26 (D.N.M. Dec. 1, 2013)(Browning, J.)

---

> In this circuit, unpublished orders are not binding precedent, . . . and we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005).  The Court finds that Brazell v. Waite, 525 F. App'x 878 (10th Cir. 2013), Sheldon v. Khanal, Browning v. American Family Mutual Insurance Co., Jenkins v. MTGLQ Investors, Nerad v. AstraZeneca Pharms., Inc., Oklahoma Farm Bureau Mutual Insurance Co. v. JSSJ Corp., Montano v. Allstate Indemnity Co., and Watkins v. Terminix International Co., all have persuasive value with respect to material issues and will assist the Court in its disposition of this Memorandum Opinion.

(describing the operation of the "voluntary-involuntary" rule)[7]; or (ii) the removal-spoiling party was fraudulently joined or procedurally misjoined.

### 1.    <u>The Presumption Against Removal</u>.

Federal courts are courts of limited jurisdiction; thus, there is a presumption against removal jurisdiction, which the defendant seeking removal must overcome.  See <u>Laughlin v. Kmart Corp.</u>, 50 F.3d 871, 873 (10th Cir. 1995); <u>Fajen v. Found. Reserve Ins. Co.</u>, 683 F.2d at 333; <u>Martin v. Franklin Capital Corp.</u>, 251 F.3d at 1290; <u>Bonadeo v. Lujan</u>, No. CIV 08-0812, 2009 WL 1324119, at *4 (D.N.M. Apr. 30, 2009)(Browning, J.)("Removal statutes are strictly construed, and ambiguities should be resolved in favor of remand.").   The defendant seeking removal must establish that federal court jurisdiction is proper "by a preponderance of the evidence."  <u>McPhail v. Deere & Co.</u>, 529 F.3d at 953 (10th Cir. 2008).  See <u>Bonadeo v. Lujan</u>, 2009 WL 1324119, at *4 ("As the removing party, the defendant bears the burden of proving all jurisdictional facts and of establishing a right to removal.").  Because federal courts are courts of limited jurisdiction, the Tenth Circuit has ruled that "courts must deny such jurisdiction if not affirmatively apparent on the record."  <u>Okla. Farm Bureau Mut. Ins. Co. v. JSSJ Corp.</u>, 149 F. App'x 775, 778 (10th Cir. 2005)(unpublished).  On the other hand, this strict construction and presumption against removal should not be interpreted as a hostility toward removal cases in the federal courts.  See <u>McEntire</u>

---

[7]The Tenth Circuit explained:

The general effect of the [voluntary-involuntary] test is that a cause cannot be removed where the removability is a result of some development other than a voluntary act of plaintiff.  The cause cannot be removed as a result of evidence from the defendant or the result of a court order rendered on the merits of the case.

<u>DeBry v. Transamerica Corp.</u>, 601 F.2d at 488 (citation omitted).

v. Kmart Corp., 2010 WL 553443, at *2 (citing Bonadeo v. Lujan, 2009 WL 1324119, at *12 ("Strict construction does not mean judicial hostility toward removal. Congress provided for removal, and courts should not create rules that are at tension with the statute's language in the name of strict construction.")).

"It is well-established that statutes conferring jurisdiction upon the federal courts, and particularly removal statutes, are to be narrowly construed in light of our constitutional role as limited tribunals." Pritchett v. Office Depot, Inc., 420 F.3d 1090, 1095 (10th Cir. 2005)(citing Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108-09 (1941); United States ex rel. King v. Hillcrest Health Ctr., 264 F.3d 1271, 1280 (10th Cir. 2001)). "All doubts are to be resolved against removal." Fajen v. Found. Reserve Ins. Co., 683 F.2d 331, 333 (10th Cir. 1982). "The burden of establishing subject-matter jurisdiction is on the party asserting jurisdiction." Montoya v. Chao, 296 F.3d 952, 955 (10th Cir. 2002).

**2.      Removal's Procedural Requirements.**

Section 1446 of Title 28 of the United States Code governs the procedure for removal. "Because removal is entirely a statutory right, the relevant procedures to effect removal must be followed." Thompson v. Intel Corp., 2012 WL 3860748, at *5. A removal that does not comply with the express statutory requirements is defective, and the Court must, upon request, remand the case to state court. See Huffman v. Saul Holdings LP, 194 F.3d at 1077. See also Chavez v. Kincaid, 15 F. Supp. 2d 1118, 1119 (D.N.M. 1998)(Campos, J.)("The [r]ight to remove a case that was originally in state court to federal court is purely statutory, not constitutional.").

Section 1446(a) provides that a party seeking removal of a matter to federal court shall file a notice of removal in the district and division where the state action is pending, "containing a short and plain statement of the grounds for removal, together with a copy of all process, pleadings,

and orders served upon such defendant or defendants in such action."  Such notice of removal is

proper if filed within thirty-days from the date when the case qualifies for federal jurisdiction.  See

Caterpillar Inc. v. Lewis, 519 U.S. at 68-69; 28 U.S.C. § 1446(b).  The Tenth Circuit has further

elaborated that, for the thirty-day period to begin to run, "this court requires clear and unequivocal

notice from the [initial] pleading itself" that federal jurisdiction is available.  Akin v. Ashland

Chem. Co., 156 F.3d 1030, 1036 (10th Cir. 1998).  The Tenth Circuit specifically disagrees with

"cases from other jurisdictions which impose a duty to investigate and determine removability

where the initial pleading indicates that the right to remove may exist."  Akin v. Ashland Chem.

Co., 156 F.3d at 1036.[8]

     After the notice of removal is filed, all state-court proceedings are automatically stayed,

and the other defendants in the case -- if not all defendants joined in the removal -- have thirty

days to consent to the removal of the action.  See 28 U.S.C. § 1446(b)(2).  "When a civil action is

removed solely under section 1441(a) [the standard removal statute, which excludes multiparty,

multiforum jurisdiction], all defendants who have been properly joined and served must join in or

consent to the removal of the action."  28 U.S.C. § 1446(b)(2)(A).  The failure of all defendants to

consent to removal will result in remand.  See Tate v. Mercedes-Benz USA, Inc., 151 F. Supp. 2d

222, 223-24 (N.D.N.Y. 2001)("Absent such consent, the removal petition is defective and the usual

course of conduct is for the federal court to remand the action back to state court.").  The rule of

unanimity applies to all defendants, whether they are required parties under rule 19 or merely

---

[8]Congress clarified removal jurisdiction and procedures in the Federal Courts Jurisdiction and Venue Clarification Act of 2011, Pub. L. No. 112-63, 125 Stat. 758.  See Thompson v. Intel Corp., No. CIV 12-0620 JB/LFG, 2012 WL 3860748, at *12 n.5 (D.N.M. Aug. 27, 2012)(Browning, J.)(discussing the Act).

proper parties under rule 20.  See 14C C. Wright & A. Miller, Federal Practice & Procedure § 3730, at 459 (4th ed. 2009).  Defendants who have not been served, however, need not join in removal. See Kiro v. Moore, 229 F.R.D. 228, 230-32 (D.N.M. 2005)(Browning, J.).

Section 1447(c) permits the district court to "require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."  28 U.S.C. § 1447(c).  The Supreme Court has stated:

> The appropriate test for awarding fees under § 1447(c) should recognize the desire to deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party, while not undermining Congress' basic decision to afford defendants a right to remove as a general matter, when the statutory criteria are satisfied.

Martin v. Franklin Capital Corp., 546 U.S. 132, 140 (2005).  The Tenth Circuit has limited district courts' discretion to impose costs and fees to those cases in which the removal was objectively unreasonable.  See Garret v. Cook, 652 F.3d 1249, 1254 (10th Cir. 2011)("[C]ourts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal.").

The Court awarded costs and attorneys' fees to a plaintiff in New Mexico ex rel. Balderas v. Valley Meat Co., LLC, because the Court determined that the removal motion was objectively unreasonable.  See No. CIV 14-1100, 2015 WL 3544288, at *26 (D.N.M. May 20, 2015) on reconsideration in part sub nom. New Mexico v. Valley Meat Co., LLC, No. CIV 14-1100, 2015 WL 9703255 (D.N.M. Dec. 14, 2015)(Browning, J.).  The Court determined that: (i) the party seeking removal -- D'Allende Meats -- was not statutorily authorized to file removal, because D'Allende Meats was not a defendant; (ii) D'Allende Meats did not obtain any defendants' affirmative consent to removal, which is necessary even if joint counsel represents each defendant; (iii) D'Allende Meats' assertion that the Court had civil-rights jurisdiction over the case lacked a

sound basis in the case's facts; and (iv) neither the case's facts or case law supported D'Allende Meats' assertion that the Court had federal-question jurisdiction. See 2015 WL 3544288, at *26. The Court concluded that "[f]ailure on any one of these bases would, on its own, justify remand[, but] [w]hiffing on all four warrants the imposition of costs and fees." 2015 WL 9703255, at *27.

### 3. **Amendment of the Notice of Removal.**

In Caterpillar, Inc. v. Lewis, the Supreme Court held that a defect in subject-matter jurisdiction cured before entry of judgment did not warrant reversal or remand to state court. See 519 U.S. at 70-78. Citing Caterpillar, Inc. v. Lewis, the Tenth Circuit has held that "a defect in removal procedure, standing alone, is not sufficient to warrant vacating judgment and remand to state court if subject matter jurisdiction existed in the federal court." Browning v. Am. Family Mut. Ins. Co., 396 F. App'x 496, 505-06 (10th Cir. 2010)(unpublished). In McMahon v. Bunn-O-Matic Corp., 150 F.3d 651 (7th Cir. 1998)(Easterbrook, J.), the United States Court of Appeals for the Seventh Circuit noticed, on appeal, defects in the notice of removal, including that the notice failed to properly allege diversity of citizenship. See 150 F.3d at 653 ("As it happens, no one paid attention to subject-matter jurisdiction . . . ."). The Seventh Circuit nevertheless permitted the defective notice of removal to be amended on appeal to properly establish subject-matter jurisdiction. See 150 F.3d at 653-54.

The Tenth Circuit has allowed defendants to remedy defects in their petition or notice of removal. See Jenkins v. MTGLQ Investors, 218 F. App'x. 719, 723 (10th Cir. 2007) (unpublished)(granting unopposed motion to amend notice of removal to properly allege jurisdictional facts); Watkins v. Terminix Int'l Co., Nos. CIV 96-3053, 96-3078, 1997 WL 34676226, at *2 (10th Cir. May 22, 1997)(per curiam)(unpublished)(reminding the defendant that, on remand, it should move to amend the notice of removal to properly allege jurisdictional facts);

Lopez v. Denver & Rio Grande W. R.R. Co., 277 F.2d 830, 832 (10th Cir. 1960)("Appellee's motion to amend its petition for removal to supply sufficient allegations of citizenship and principal place of business existing at the time of commencement of this action is hereby granted, and diversity jurisdiction is therefore present."). The Tenth Circuit has further reasoned that disallowing amendments to the notice of removal, even after the thirty-day removal window had expired, when the defendant made simple errors in its jurisdictional allegations, "would be too grudging with reference to the controlling statute, too prone to equate imperfect allegations of jurisdiction with the total absence of jurisdictional foundations, and would tend unduly to exalt form over substance and legal flaw-picking over the orderly disposition of cases properly committed to federal courts." Hendrix v. New Amsterdam Cas. Co., 390 F.2d 299, 301 (10th Cir. 1968). The Tenth Circuit has noted that a simple error in a jurisdictional allegation includes failing to identify a corporation's principal place of business or referring to an individual's state of residence rather than citizenship. See Hendrix v. New Amsterdam Cas. Co., 390 F.2d at 301. In McEntire v. Kmart Corp., when faced with insufficient allegations in the notice of removal -- allegations of "residence" not "citizenship" -- the Court granted the defendants leave to amend their notice of removal to cure the errors in some of the "formalistic technical requirements." 2010 WL 553443, at *8 (citing Hendrix v. New Amsterdam Cas. Co., 390 F.2d at 300-02). Further, in Thompson v. Intel Corp., the Court permitted the defendant, Intel Corp., to amend its notice of removal to include missing jurisdictional elements, including evidence that its principal place of business and corporate headquarters -- the center of Intel Corp.'s direction, control, and coordination of activities -- is out of state, so that the diversity requirements were met. See 2012 WL 3860748, at *1.

There are limits to the defects that an amended notice of removal may cure, however, as Professors Charles Alan Wright and Arthur R. Miller explain:

> [A]n amendment of the removal notice may seek to accomplish any of several objectives: It may correct an imperfect statement of citizenship, state the previously articulated grounds more fully, or clarify the jurisdictional amount. In most circumstances, however, defendants may not add completely new grounds for removal or furnish missing allegations, even if the court rejects the first-proffered basis of removal, and the court will not, on its own motion, retain jurisdiction on the basis of a ground that is present but that defendants have not relied upon.

14 C. Wright & A. Miller, Federal Practice & Procedure § 3733, at 651-59 (4th rev. ed. 2019)(footnotes omitted). Professor James William Moore has similarly recognized: "[A]mendment may be permitted after the 30-day period if the amendment corrects defective allegations of jurisdiction, but not to add a new basis for removal jurisdiction." 16 J. Moore, D. Coquillette, G. Joseph, S. Schreiber, G. Vairo, & C. Varner, Moore's Federal Practice § 107.30[2][a][iv], at 107-317 to -18 (3d ed. 2013). Thus, where diversity jurisdiction is asserted as a basis for removal of an action to federal court, the district court may permit the removing defendant to amend its removal notice, if necessary, to fully allege facts which satisfy the requirements of diversity jurisdiction by a preponderance of the evidence. See Carrillo v. MCS Indus., Inc., No. CIV 12-0573, 2012 WL 5378300, at *14 (D.N.M. Oct. 15, 2012)(Browning, J.)(permitting party to amend its notice of removal when the removing party did "not assert[] a new basis for jurisdiction, or a new allegation not present in its Notice of Removal; rather, the . . . Amended Notice of Removal provide[d] greater detail regarding the same basis for jurisdiction asserted in the . . . Notice of Removal"). Cf. New Mexico ex rel. Balderas v. Valley Meat Co., No. CIV 14-1100, 2015 WL 3544288, at *25 (D.N.M. May 20, 2015)(Browning, J.)(denying amendment when it sought to assert a new jurisdictional basis that was not raised in the notice of removal).

4.      **Consideration of Post-Removal Evidence.**

The Tenth Circuit looks to both evidence in the complaint and submitted after the complaint in determining whether the criteria necessary for removal are met.  See Thompson v. Intel Corp., 2012 WL 3860748, at *8 (citing McPhail v. Deere & Co., 529 F.3d at 956).  The Tenth Circuit explained in McPhail v. Deere & Co. that a district court may have evidence presented to it after a notice of removal has been filed, even if produced at a hearing on subject-matter jurisdiction, to determine if the jurisdictional requirements are met.  See 529 F.3d at 953. "[B]eyond the complaint itself, other documentation can provide the basis for determining the amount in controversy -- either interrogatories obtained in state court before removal was filed, or affidavits or other evidence submitted in federal court afterward."  McPhail v. Deere & Co., 529 F.3d at 956 (citing Meridican Secs. Ins. Co. v. Sadowski, 441 F.3d 536, 541-42 (7th Cir. 2006), and Manguna v. Prudential Prop. & Cas. Ins. Co., 276 F.3d 720, 723 (5th Cir. 2002)).  As this Court has explained, "the Seventh Circuit, on which the Tenth Circuit has heavily relied when addressing the amount in controversy, has recognized that 'events subsequent to removal may clarify what the plaintiff was actually seeking when the case was removed.'"  Aranda v. Foamex Int'l, 884 F. Supp. 2d 1186, 1208 (D.N.M. 2012)(Browning, J.)(quoting Carroll v. Stryker Corp., 658 F.3d 675, 681 (7th Cir. 2011)).  Thus, when determining if the requirements for federal jurisdiction are met in a matter removed from state court, a district court may consider evidence submitted after removal.  See Thompson v. Intel Corp., 2012 WL 3860748, at *14 ("[I]t is appropriate to consider post-removal evidence to determine whether subject-matter jurisdiction exists."); Carrillo v. MCS Indus., Inc., 2012 WL 5378300, at *6-9.

5.      **Fraudulent Joinder.**

A defendant may remove a case to federal court based upon diversity jurisdiction in the absence of complete diversity if a plaintiff joins a nondiverse party fraudulently to defeat federal jurisdiction. See Am. Nat'l Bank & Trust Co. v. Bic Corp., 931 F.2d 1411, 1412 (10th Cir. 1991); Hernandez v. Menlo Logistics, Inc., No. CIV 12-0907, 2013 WL 5934411, at *14-17 (D.N.M. Sept. 30, 2013)(Browning, J.).  A defendant may remove on the basis of fraudulent joinder either while the nondiverse party is still joined or after it is dismissed from the case -- the doctrine can thus function as an exception to either complete diversity or the voluntary-involuntary rule.  "'[A] fraudulent joinder analysis [is] a jurisdictional inquiry,'" Bio-Tec Envtl., LLC v. Adams, 792 F. Supp. 2d at 1214 (quoting Albert v. Smith's Food & Drug Ctrs., Inc., 356 F.3d 1242, 1247 (10th Cir. 2004)), and, thus, the Tenth Circuit instructs that the district court should "pierce the pleadings, consider the entire record, and determine the basis of joinder by any means available," Dodd v. Fawcett Publ'ns, Inc., 329 F.2d 82, 85 (10th Cir. 1964)(citations omitted).  "A district court may disregard a nondiverse party named in the state court complaint and retain jurisdiction if joinder of the nondiverse party is a sham or fraudulent." Baeza v. Tibbetts, No. CIV 06-0407, 2006 WL 2863486, at *3 (D.N.M. July 7, 2006)(Vázquez, J.).  The Supreme Court has stated: "Merely to traverse the allegations upon which the liability of the resident defendant is rested or to apply the epithet 'fraudulent' to the joinder will not suffice: the showing must be such as compels the conclusion that the joinder is without right and made in bad faith." Chesapeake & Ohio Ry. Co. v. Cockrell, 232 U.S. 146, 152 (1914).  The Tenth Circuit has explained that allegations of fraudulent joinder complicate the analysis whether removal is proper, because, "[w]hile a court normally evaluates the propriety of a removal by determining whether the allegations on the face of the complaint satisfy the jurisdictional requirements, fraudulent joinder claims are assertions

that the pleadings are deceptive." <u>Nerad v. AstraZeneca Pharms., Inc.</u>, 203 F. App'x 911, 913 (10th Cir. 2006)(unpublished).

The party asserting fraudulent joinder bears the burden of proof. <u>See</u> <u>Montano v. Allstate Indem. Co.</u>, 211 F.3d 1278, 2000 WL 525592, at *1 ("The case law places a heavy burden on the party asserting fraudulent joinder."). "To justify removal based on diversity jurisdiction, a defendant must plead a claim of fraudulent joinder with particularity and prove the claim with certainty." <u>Couch v. Astec Indus., Inc.</u>, 71 F. Supp. 2d 1145, 1146-47 (D.N.M. 1999)(Baldock, J.). Before 2013, the most recent published Tenth Circuit decision to state the burden of proof for demonstrating fraudulent joinder was issued over forty years earlier in <u>Smoot v. Chicago, Rock Island & Pacific Railroad Co.</u>, 378 F.2d 879 (10th Cir. 1967). The Tenth Circuit said that fraudulent joinder must be "established with complete certainty upon undisputed evidence." <u>Smoot v. Chi., Rock Island & Pac. R.R. Co.</u>, 378 F.2d at 882.

Actual fraud -- <u>e.g.</u>, a plaintiff colluding with a nondiverse defendant to defeat removal[9] -- suffices to establish fraudulent joinder, but it is not required. <u>See</u> <u>McLeod v. Cities Serv. Gas Co.</u>, 233 F.2d 242, 246 (10th Cir. 1956)("[C]ollusion in joining a resident defendant for the sole purpose of preventing removal . . . may be shown by any means available."). In <u>Smoot v. Chicago, Rock Island & Pacific Railroad Co.</u>, the Tenth Circuit stated two other bases for finding fraudulent joinder: (i) "[t]he joinder of a resident defendant against whom no cause of action is stated is a patent sham"; or (ii) "though a cause of action be stated, the joinder is similarly

---

[9]Collusion might look something like this: a plaintiff names a nondiverse defendant under a highly dubious theory of liability; the plaintiff contacts the defendant and offers to dismiss the case at the end of the one-year limitation, <u>see</u> 28 U.S.C. § 1446(c), if the defendant agrees not to move to dismiss before the one-year mark; the defendant agrees to the arrangement to save litigation costs, as well as to avoid any slim chance that the court decides to recognize the plaintiff's theory of liability against it.

fraudulent if in fact no cause of action exists."  378 F.2d at 882 (quoting Dodd v. Fawcett Pubs., Inc., 329 F.2d 82, 85 (10th Cir. 1964)).  The Tenth Circuit found fraudulent joinder, because the joined party's non-liability was "established with complete certainty upon undisputed evidence." 378 F.2d at 882.  "This does not mean that the federal court will pre-try, as a matter of course, doubtful issues of fact to determine removability; the issue must be capable of summary determination and be proven with complete certainty."  Smoot v. Chi., Rock Island & Pac. R.R. Co., 378 F.2d at 882.  In Smoot v. Chicago, Rock Island & Pacific Railroad Co., the plaintiff died when his car collided with a freight train.  See 378 F.2d at 881.  The plaintiff's estate sued the railroad company and joined a non-diverse alleged employee as a defendant.  See 378 F.2d at 881. It was undisputed that the diversity-destroying party's employment with the railroad company had "terminated almost fifteen months before the collision and that he was in no way connected with the acts of negligence ascribed to him."  378 F.2d at 881.

In recent unpublished decisions, the Tenth Circuit has adopted different articulations of the burden of proof for fraudulent joinder, two of which are from the United States Court of Appeals for the Fifth Circuit.  In Montano v. Allstate Indemnity Co., the Tenth Circuit quoted favorably Hart v. Bayer Corp., 199 F.3d 239 (5th Cir. 2000), which states:

> To prove their allegation of fraudulent joinder [the removing parties] must demonstrate that there is no possibility that [plaintiff] would be able to establish a cause of action against [the joined party], in state court.  In evaluating fraudulent joinder claims, we must initially resolve all disputed questions of fact and all ambiguities in the controlling law in favor of the non-removing party.  We are then to determine whether that party has any possibility of recovering against the party whose joinder is questioned.

Montano v. Allstate Indem. Co., 211 F.3d 1278, 2000 WL 525592, at *4-5 (alterations in original)(quoting Hart v. Bayer Corp., 199 F.3d at 246)(internal quotation marks omitted).  The Tenth Circuit stated that the standard for proving fraudulent joinder "is more exacting than that for

dismissing a claim under Fed. R. Civ. P. 12(b)(6); indeed, the latter entails the kind of merits determination that, absent fraudulent joinder, should be left to the state court where the action commenced." Montano v. Allstate Indem. Co., 211 F.3d 1278, 2000 WL 525592, at *2. The Tenth Circuit in Montano v. Allstate Indemnity Co. also quoted from Batoff v. State Farm Insurance Co., 977 F.2d 848 (3d Cir. 1992), which states: "A claim which can be dismissed only after an intricate analysis of state law is not so wholly insubstantial and frivolous that it may be disregarded for purposes of diversity jurisdiction." 977 F.2d at 853.

In Nerad v. AstraZeneca Pharmaceuticals, Inc., the Tenth Circuit adopted a different articulation of the burden of proof. See 203 F. App'x at 913. The Tenth Circuit stated that, where fraudulent joinder is asserted, "the court must decide whether there is a reasonable basis to believe the plaintiff might succeed in at least one claim against the non-diverse defendant." 203 F. App'x at 913 (citing Badon v. RJR Nabisco, Inc., 224 F.3d 382, 393 (5th Cir. 2000)). The Tenth Circuit explained that "[a] 'reasonable basis' means just that: the claim need not be a sure-thing, but it must have a basis in the alleged facts and the applicable law." 203 F. App'x at 913.

The Fifth Circuit recognized the inconsistencies in various articulations of the standard for fraudulent joinder and directly addressed the problem in Travis v. Irby, 326 F.3d 644 (5th Cir. 2003):

> Neither our circuit nor other circuits have been clear in describing the fraudulent joinder standard. The test has been stated by this court in various terms, even within the same opinion. For example, the Griggs [v. State Farm Lloyds, 181 F.3d 694 (5th Cir. 1999),] opinion states,
>
> > To establish that a non-diverse defendant has been fraudulently joined to defeat diversity, the removing party must prove . . . that there is *absolutely no possibility* that the plaintiff will be able to establish a cause of action against the non-diverse defendant in state court.

181 F.3d at 699 (emphasis added)(citing <u>Burden v. Gen. Dynamics Corp.</u>, 60 F.3d 213, 317 (5th Cir. 1995)).   The <u>Griggs</u> opinion later restates that test as follows -- "Stated differently, we must determine whether there is any reasonable basis for predicting that [the plaintiff] might be able to establish [the non-diverse defendant's] liability on the pleaded claims in state court."   181 F.3d at 699 (emphasis added).   Similarly, in summing up federal law, Moore's Federal Practice states at one point:   "To establish fraudulent joinder, a party must demonstrate . . . the *absence of any possibility* that the opposing party has stated a claim under state law."   16 Moore's Federal Practice § 107.14[2][c][iv][A] (emphasis added).   It then comments: "The ultimate question is whether there is arguably a *reasonable basis* for predicting that state law might impose liability on the facts involved."   Although these tests appear dissimilar, "absolutely no possibility" vs. "reasonable basis," we must assume that they are meant to be equivalent because each is presented as a restatement of the other.

326 F.3d at 647 (emphases in <u>Travis v. Irby</u>).   The Fifth Circuit has settled upon this phrasing:

> [T]he test for fraudulent joinder is whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant.

<u>Smallwood v. Ill. Cent. R.R. Co.</u>, 385 F.3d 568, 573 (5th Cir. 2004)("To reduce possible confusion, we adopt this phrasing of the required proof and reject all others, whether the others appear to describe the same standard or not.").

In <u>Zufelt v. Isuzu Motors America, LCC</u>, 727 F. Supp. 2d 1117, 1124 (D.N.M. 2009)(Browning, J.), the Court addressed the standard that courts should use when addressing fraudulent joinder and concluded that, to establish that a party was fraudulently joined, a defendant has the burden of demonstrating that "there is no possibility that the plaintiff would be able to establish a cause of action" against the party alleged to be fraudulently joined.   727 F. Supp. 2d at 1124-25 (citing <u>Montano v. Allstate Indem. Co.</u>, 211 F.3d 1278, 2000 WL 525592, at *4-5).   The Court explained:

> [T]his District has consistently adopted the "possibility" standard when assessing fraudulent joinder claims.   <u>See</u> <u>Allen v. Allstate Ins. Co.</u>, No. CIV 08-0733, 2008 WL 6045497 (D.N.M. Oct. 31, 2008)(Browning, J.)(holding that the

claims asserted against the non-diverse defendant were "possibly viable under New Mexico law, and . . . sufficient to preclude federal jurisdiction"); Baeza v. Tibbetts, 2006 U.S. Dist. LEXIS 95517, at *11, 2006 WL 2863486 (stating that "[r]emand is required if any one of the claims against [the defendant] is possibly viable"); Provencio v. Mendez, No. CIV 05-623, 2005 U.S. Dist. LEXIS 39012, at *25, 2005 WL 3662957 (D.N.M. Sept. 29, 2005)(Browning, J.)(stating that "there must be no possibility the [p]laintiffs have a claim against [the non-diverse defendant]"); Couch v. Astec Indus., Inc., 71 F. Supp. 2d at 1147 (stating that, to defeat removal jurisdiction, "[t]he plaintiff need only demonstrate the possibility of the right to relief"). This Court, in Couch v. Astec Indus., Inc., noted with approval the language of the United States Court of Appeals for the Eleventh Circuit, which states that "if there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court." Couch v. Astec Indus., Inc., 71 F. Supp. 2d at 1147 (quoting Triggs v. John Crump Toyota, Inc., 154 F.3d 1284, 1287 (11th Cir. 1998))(emphasis in original).

Zufelt v. Isuzu Motors Am., LCC, 727 F. Supp. 2d at 1229. In Brazell v. Waite, the Tenth Circuit stated that the "removing party must show that the plaintiff has 'no cause of action' against the fraudulently joined defendant," but it did not further elaborate on that burden. 525 F. App'x at 881 (quoting Dodd v. Fawcett Publ'ns, Inc., 329 F.2d 82, 85 (10th Cir. 1964), and Roe v. Gen. Am. Life Ins. Co., 712 F.2d 450, 452 n.* (10th Cir. 1983)).

In 2013, the Tenth Circuit published its first opinion since 1946 regarding the burden of proof for demonstrating fraudulent joinder: "'To establish fraudulent joinder, the removing party must demonstrate either: (1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court.'" Dutcher v. Matheson, 733 F.3d 980, 988 (10th Cir. 2013)(quoting Cuevas v. BAC Home Loans Servicing, LP, 648 F.3d 242, 249 (5th Cir. 2011)). In Dutcher v. Matheson, the Tenth Circuit reviewed a district court's holding that it had diversity jurisdiction over a case where Utah citizens sued ReconTrust, a Texas-based national bank, Stuart T. Matheson, a Utah citizen, and Matheson's law firm. See 733 F.3d 983, 987. The plaintiffs alleged that Matheson and his law firm enabled

ReconTrust to conduct an illegal nonjudicial foreclosure by holding the foreclosure sales on behalf of the Texas-based bank.  See 733 F.3d at 983.  The defendants removed the case to federal court and alleged that the plaintiffs fraudulently joined the Utah defendants.  See 733 F.3d at 983.  The district court agreed, finding that, under Utah law, "an attorney cannot be held liable to a non-client absent fraud, collusion or privity of contract."  733 F.3d at 988.  The Tenth Circuit disagreed with that characterization of Utah law, concluding instead that, in the case on which the defendants relied, the Supreme Court of Utah "simply limited the circumstances in which a lawyer owes a duty of care to non-clients from actions arising out of the provision of legal services."  733 F.3d at 988.  In rejecting the claim of fraudulent joinder, the Tenth Circuit said

> that does not mean that the plaintiffs have stated a valid claim against Matheson and his law firm.  Or even that Matheson and his law firm are not somehow fraudulently joined.  But the defendants needed to clear a high hurdle to prove something they have yet to prove, i.e., fraudulent joinder.

733 F.3d at 989.

The Tenth Circuit did not elaborate on the defendant's burden to show fraudulent joinder, except to say that it is "a high hurdle."  733 F.3d at 989.  It quoted, however, Cuevas v. BAC Home Loans Servicing, LP, a Fifth Circuit opinion that repeats the clarified standard from Smallwood v. Illinois Central Railroad Co.  See Dutcher v. Matheson, 733 F.3d at 988 (10th Cir. 2013)(quoting Cuevas v. BAC Home Loans Servicing, LP, 648 F.3d at 249).

> Under the second way, the test is "whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." [Smallwood v. Ill. Cent. R.R. Co., 385 F.3d at 573.]  If there is no reasonable basis of recovery, then the court can conclude that the plaintiff's decision to join the in-state defendant was indeed improper, unless that showing compels the dismissal of all defendants.  There is no improper joinder if the defendants' showing compels the same result for the resident and nonresident defendants, because this simply means that the plaintiff's case is ill founded as to all of the defendants.  Such a

defense is more properly an attack on the merits of the claim, rather than an inquiry into the propriety of the joinder of the in-state defendant.

Cuevas v. BAC Home Loans Servicing, LP, 648 F.3d at 249 (emphasis in original)(citations omitted).  Based on the Tenth Circuit's history of relying on Fifth Circuit analysis in fraudulent joinder cases, the Tenth Circuit would likely approve this additional explanation of the fraudulent joinder standard.  Accordingly, the Court will use the following standard for fraudulent joinder: whether the defendant has demonstrated that there is no possibility that the plaintiff will obtain a judgment against an in-state defendant.  Cf. Zufelt v. Isuzu Motors Am., LCC, 727 F. Supp. 2d at 1124-25 (concluding that fraudulent joinder occurs when "there is no possibility that the plaintiff would be able to establish a cause of action" against the party alleged to be fraudulently joined).  No case sets forth the burden of proof that applies to (much rarer) allegations of actual fraud, such as plaintiff-defendant collusion . . . but the Court concludes that the clear-and-convincing standard -- the usual standard for fraud -- is appropriate, see, e.g., United States v. Thompson, 279 F.2d 165, 167 (10th Cir. 1960)("An allegation of fraud is a serious matter; it is never presumed and must be proved by clear and convincing evidence."  (citations omitted)).

A less-clear issue -- at least in other courts -- is whether fraudulent joinder permits the removal of actions that have been pending in state court for over a year.  Section 1446(c)(1) provides: "A case may not be removed under subsection (b)(3) on the basis of jurisdiction conferred by section 1332 more than 1 year after commencement of the action . . . ."  28 U.S.C. § 1446(c)(1).  The two district court cases within the Tenth Circuit to address the issue both concluded that fraudulent joinder does not permit the removal of actions that have been pending in state court for over a year, but the district courts issued those opinions before Congress amended § 1446 in 2012 to add the remainder (the omitted portion) of the sentence quoted earlier in this

paragraph: "unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action." 28 U.S.C. § 1446(c)(1). See Chidester v. Kaz, Inc., No. CIV 08-0776, 2009 WL 2588866, at *3 (N.D. Okla. Aug. 19, 2009)(Kern, J.); Caudill v. Ford Motor Co., 271 F. Supp. 2d 1324, 1327 (N.D. Okla. 2003)(Eagan, J.). Outside the Tenth Circuit, the Courts of Appeals have said little, and district courts appear more-or-less evenly split on the issue, with some district courts holding that a case can be removed on the basis of fraudulent joinder after the one-year mark, see Hardy v. Ajax Magnathermic Corp., 122 F. Supp. 2d 757, 759 (W.D. Ky. 2000)(Russell, J.); Johnson v. Heublein, Inc., 982 F. Supp. 438, 444-45 (S.D. Miss. 1997)(Barbour, J.); Barnett v. Sylacauga Autoplex, 973 F. Supp. 1358, 1367 (N.D. Ala. 1997)(Propst, J.); Leslie v. BancTec Serv. Corp., 928 F. Supp. 341, 346 (S.D.N.Y. 1996)(Batts, J.); Morrison v. Nat'l Ben. Life Ins. Co., 889 F. Supp. 945, 950-51 (S.D. Miss. 1995)(Barbour, J.); Saunders v. Wire Rope Corp., 777 F. Supp. 1281, 1282-83 (E.D. Va. 1991)(Williams, J.); Greer v. Skilcraft, 704 F. Supp. 1570, 1582-83 (N.D. Ala. 1989)(Pointer, J.), and others concluding that the fraudulent-joinder doctrine bows to the one-year limitation, see Codner v. Am. Home Prods. Corp., 123 F. Supp. 2d 1272, 1274 (W.D. Okla. 2000)(Cauthron, J.); Hattaway v. Engelhard Corp., 998 F. Supp. 1479, 1481-82 (M.D. Ga. 1998)(Fitzpatrick, J.); Russaw v. Voyager Life Ins. Co., 921 F. Supp. 723, 724-25 (M.D. Ala. 1996)(Thompson, J.); Zumas v. Owens-Corning Fiberglas Corp., 907 F. Supp. 131, 133-34 (D. Md. 1995)(Kaufman, J.); Price v. Messer, 872 F. Supp. 317, 319-21 (S.D. W. Va. 1995)(Haden, J.); Norman v. Sundance Spas, Inc., 844 F. Supp. 355, 356-57 (W.D. Ky. 1994)(Heyburn, J.); Brock v. Syntex Labs., Inc., 791 F. Supp. 721, 722-23 (E.D. Tenn. 1992)(Jarvis, J.); Cofer v. Horsehead Research & Dev. Co., 805 F. Supp. 541, 543-44 (E.D. Tenn. 1991)(Jordan, J.); O'Rourke v. Communique Telecomms., Inc., 715 F. Supp. 828, 829 (E.D. Mich. 1989)(Duggan, J.). Again, however, all of these cases

came before the addition of 28 U.S.C. § 1446(c)(1), which grafted a bad-faith exception to the one-year limitation, discussed at length later in this opinion. In Aguayo v. AMCO Insurance Co., 59 F. Supp. 3d 1225, 1256 (D.N.M. Oct. 31, 2014)(Browning, J.), the Court concluded that, because § 1446(c)(1)'s bad-faith exception is procedural, rather than jurisdictional, see 59 F. Supp. 3d at 1270 (noting that Congress amended the one-year limitation to clarify that it is procedural by modeling it after the Fifth Circuit's interpretation in Tedford v. Warner-Lambert Co., 327 F.3d 423, 427 (5th Cir. 2003)), the exception extends the applicability of the fraudulent-joinder doctrine past one year. See 59 F. Supp. 3d at 1256.

> The Court concludes that the addition of the bad-faith exception to the one-year limitation clarifies that the one-year limitation is procedural, rather than jurisdictional, and, thus, extends the applicability of fraudulent joinder doctrine past the one-year mark. Thus, defendants may remove a case on fraudulent joinder grounds even after it has been pending in state court for more than one year.

59 F. Supp. 3d at 1256.

The Tenth Circuit cannot review a district court's order to remand based on a finding of fraudulent joinder. See Nerad v. AstraZeneca Pharms., Inc., 203 F. App'x at 913 (holding that, because the district court remanded based on its conclusion that it lacked subject-matter jurisdiction at the time of removal, 28 U.S.C. § 1447(d) precluded the Tenth Circuit from reviewing the order). The fraudulent joinder inquiry on a motion to remand is a subject-matter jurisdiction inquiry. See Albert v. Smith's Food & Drug Ctrs., Inc., 356 F.3d at 1247.

**6.** **Procedural Misjoinder.**[10]

Rule 20 of the Federal Rules of Civil Procedure provides:

_____

[10]The Court refers to the doctrine as "procedural misjoinder," rather than "fraudulent misjoinder," because of the confusion that the word "fraudulent" has caused in the fraudulent joinder context. As the Honorable Martha A. Vázquez, then-Chief District Judge for the United States District Court for the District of New Mexico, once explained: "Fraudulent joinder is a term

**(a)**     **Persons Who May Join or Be Joined.**

    **(1)**     **Plaintiffs.**  Persons may join in one action as plaintiffs if:

        **(A)**     they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and

        **(B)**     any question of law or fact common to all plaintiffs will arise in the action.

    **(2)**     **Defendants.**  Persons -- as well as a vessel, cargo, or other property subject to admiralty process in rem -- may be joined in one action as defendants if:

        **(A)**     any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and

        **(B)**     any question of law or fact common to all defendants will arise in the action.

    **(3)**     **Extent of Relief.**  Neither a plaintiff nor a defendant need be interested in obtaining or defending against all the relief demanded. The court may grant judgment to one or more plaintiffs according to their rights, and against one or more defendants according to their liabilities.

Fed. R. Civ. P. 20(a).

---

of art. It does not reflect on the integrity of plaintiff or counsel, but rather exists regardless of the plaintiff's motives when the circumstances do not offer any other justifiable reason for joining the defendant." <u>Baeza v. Tibbetts</u>, No. CIV 06-0407, 2006 WL 2863486, at *1 n.1 (D.N.M. July 7, 2006)(Vázquez, J.). The Court will refer to the doctrine as "procedural misjoinder" to avoid expanding that confusion. <u>Flores-Duenas v. Briones</u>, 2013 WL 6503537, at *22 n.8.

"Procedural misjoinder," also known as "fraudulent misjoinder," is a recent development that is related to fraudulent joinder, but distinct from it. Professor E. Farish Percy of the University of Mississippi School of Law has explained:

> Fraudulent misjoinder occurs when a plaintiff sues a diverse defendant in state court and joins a non-diverse or in-state defendant even though the plaintiff has no reasonable procedural basis to join such defendants in one action. While the traditional fraudulent joinder doctrine inquires into the substantive factual or legal basis for the plaintiff's claim against the jurisdictional spoiler, the fraudulent misjoinder doctrine inquires into the procedural basis for the plaintiff's joinder of the spoiler. Most state joinder rules are modeled after the federal joinder rule that authorizes permissive joinder of parties when the claims brought by or against them arise "out of the same transaction, occurrence, or series of transactions or occurrences" and give rise to a common question of law or fact. Thus, in a case where the joined claims are totally unrelated, a federal district court may find removal jurisdiction pursuant to the fraudulent misjoinder doctrine even though the plaintiff has a reasonable substantive basis for the claim against the jurisdictional spoiler.

E. Farish Percy, Defining the Contours of the Emerging Fraudulent Misjoinder Doctrine, 29 Harv. J.L. & Pub. Pol'y 569, 572 (2006)(footnotes omitted).

The United States Court of Appeals for the Eleventh Circuit formulated the doctrine in Tapscott v. MS Dealer Service Corp., and explained its purpose as follows:

> Misjoinder may be just as fraudulent as the joinder of a resident defendant against whom a plaintiff has no possibility of a cause of action. A defendant's "right of removal cannot be defeated by a fraudulent joinder of a resident defendant having no real connection with the controversy." Wilson v. Republic Iron & Steel Co., 257 U.S. 92, 97 (1921).

Tapscott v. MS Dealer Serv. Corp., 77 F.3d at 1360 (footnote omitted). The facts of Tapscott v. MS Dealer Service Corp. illustrate the doctrine's operation. The case involved two proposed state-law class actions, joined together in a single case: (i) a class action in which an Alabama resident alleged that four defendants, including an Alabama resident, had violated various provisions of Alabama fraud and consumer-protection law in connection with the "sale of 'service

contracts' on automobiles sold and financed in Alabama," 77 F.3d at 1355; and (ii) a class action in which Alabama alleged three defendants, including Lowe's Home Centers, a North Carolina resident, had violated Alabama consumer-protection law in connection with the sale of retail product, see 77 F.3d at 1355. The second class action named Lowe's Home Centers as "the putative defendant class representative for a 'merchant' class." 77 F.3d at 1355. This unified case matched particular plaintiffs "with particular defendants against whom they allege individual claims"; as relevant here, the only two class representatives for the class action were Alabama residents, and they asserted claims against only Lowe's Home Centers. 77 F.3d at 1359-60.

The district court concluded that there was no allegation of joint liability or conspiracy, and that the claims involved in the car-sales class action were "wholly distinct from the alleged transactions involved in the" retail-products class action. 77 F.3d at 1360. Rather, "[t]he only similarity between" the two classes was that they both alleged violations of Alabama statutory law; "[s]uch commonality on its face [was] insufficient for joinder." 77 F.3d at 1360. The Eleventh Circuit agreed and explained:

> Although certain putative class representatives may have colorable claims against resident defendants in the putative "automobile" class, these resident defendants have no real connection with the controversy involving [the retail-products plaintiffs and] Lowe's in the putative "merchant" class action. We hold that the district court did not err in finding an attempt to defeat diversity jurisdiction by fraudulent joinder. We do not hold that mere misjoinder is fraudulent joinder, but we do agree with the district court that Appellants' attempt to join these parties is so egregious as to constitute fraudulent joinder.

77 F.3d at 1360.

The procedural misjoinder doctrine's reach outside the Eleventh Circuit is unclear. The Tenth Circuit recently described the doctrine's status: "It appears that the Fifth Circuit may also accept procedural misjoinder. No circuit has rejected the doctrine, but the district courts and the

commentators are split." Lafalier v. State Farm Fire & Cas. Co., 391 F. App'x at 739 (citing, for the proposition that the Fifth Circuit accepts the doctrine, Crockett v. R.J. Reynolds Tobacco Co., 436 F.3d at 532-33; In re Benjamin Moore & Co., 309 F.3d 296, 298 (5th Cir. 2002)). While the Tenth Circuit recognized that "[t]here may be many good reasons to adopt procedural misjoinder," it declined to adopt the doctrine, because it would not have changed the result in that case. Lafalier v. State Farm Fire & Cas. Co., 391 F. App'x at 739. See 14B Charles A. Wright & Arthur Miller, Federal Practice & Procedure § 3723, at 867-77 & n.122 (3d ed. 2009)(confirming the developing doctrine's unclear status). The Court, however, has adopted the doctrine and applied it in two cases, although it concluded in both cases that no procedural misjoinder occurred, and both cases thus resulted in remand. See Ullman v. Safeway Ins. Co., 995 F. Supp. 2d 1196 (D.N.M. 2013)(Browning, J.); Flores-Duenas v. Briones, 2013 WL 6503537, at *1.

**7.      The "Bad Faith" Exception to the One-Year Removal Bar for Diversity Cases.**

Since 1988, 28 U.S.C. § 1446 has provided that no case that has been pending more than one year in state court can be removed on the basis of diversity jurisdiction.[11] On January 6, 2012,

---

[11]The one-year limitation applies only to standard diversity jurisdiction under 28 U.S.C. § 1332(a) and not to class actions removed under § 1332(d), which is a part of the Class Action Fairness Act of 2005, Pub. L. No. 109-2, 119 Stat. 4-14 ("CAFA"). Although exempting CAFA from the one-year limitation appears to defy the § 1446(c)(1)'s text, which refers to cases brought "on the basis of jurisdiction conferred by section 1332," another section of Title 28 clarifies the issue:

> A class action may be removed to a district court of the United States in accordance with section 1446 (except that the 1-year limitation under section 1446(c)(1) shall not apply), without regard to whether any defendant is a citizen of the State in which the action is brought, except that such action may be removed by any defendant without the consent of all defendants.

28 U.S.C. § 1453(b) (emphasis added). See Reece v. Bank of N.Y. Mellon, 760 F.3d 771, 775-76 (8th Cir. 2014).

Congress put into effect the Federal Courts Jurisdiction and Venue Clarification Act of 2011, Pub. L. No. 112-63, 125 Stat. 760, 762 ("JVCA"), which, among other changes, added a bad-faith exception to the one-year limitation.  Subsection (c) reads as follows, with the sole sentence of the statute that pre-exists the JVCA underlined:

**Requirements; removal based on diversity of citizenship.** --

**(1)**    <u>A case may not be removed under subsection (b)(3) on the basis of jurisdiction conferred by section 1332 more than 1 year after commencement of the action</u>, unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action.

**(2)**    If removal of a civil action is sought on the basis of the jurisdiction conferred by section 1332(a), the sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy, except that --

    **(A)**    the notice of removal may assert the amount in controversy if the initial pleading seeks --

        **(i)**    nonmonetary relief; or

        **(ii)**    a money judgment, but the State practice either does not permit demand for a specific sum or permits recovery of damages in excess of the amount demanded; and

    **(B)**    removal of the action is proper on the basis of an amount in controversy asserted under subparagraph (A) if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds the amount specified in section 1332(a).

**(3)**    **(A)**    If the case stated by the initial pleading is not removable solely because the amount in controversy does not exceed the amount specified in section 1332(a), information relating to the amount in controversy in the record of the State proceeding, or in responses to discovery, shall be treated as an 'other paper' under subsection (b)(3).[12]

---

[12]Subsection (b)(3) provides:

**(B)** If the notice of removal is filed more than 1 year after commencement of the action and the district court finds that the plaintiff deliberately failed to disclose the actual amount in controversy to prevent removal, that finding shall be deemed bad faith under paragraph (1).

28 U.S.C. § 1446(c) (underscoring added to show pre-JVCA content).

A plaintiff's "bad faith" can manifest itself in either of the two requirements for diversity jurisdiction: (i) a plaintiff can name or retain nondiverse parties or forum-citizen defendants to defeat complete diversity or the forum-defendant rule, respectively; or (ii) it can obfuscate the quantity of damages it seeks for the purpose of defeating the amount-in-controversy requirement.[13]

It is clear how the Court should construe the second requirement -- the Tenth Circuit's opinion in

---

Except as provided in subsection (c), if the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.

28 U.S.C. § 1446(b)(3). The combination of subsection (c)(3)(A)'s new provisions and subsection (b)(3)'s pre-JVCA provisions means that the defendant's thirty-day clock to remove a case starts whenever they have sufficient information -- obtained from anywhere in the case, and not merely from the pleadings or settlement communications -- to conclude that the case meets the amount-in-controversy requirement.

[13]As previously explained, it was unclear before the JVCA's passage whether the common-law doctrine of fraudulent joinder creates an exception to the forum-defendant rule or just to complete diversity. See supra Law Regarding Removal, Remand, Fraudulent Joinder, Procedural Misjoinder, and Bad Faith Part 4. The bad-faith exception, however, is statutory, and the statute applies to all cases in which "the plaintiff has acted in bad faith in order to prevent a defendant from removing the action." 28 U.S.C. § 1446(c)(1). The statute's plain meaning thus includes both the bad-faith joinder of a nondiverse party -- which defeats removal jurisdiction by defeating original diversity jurisdiction -- and the bad-faith joinder of a forum-citizen defendant -- which only defeats removal jurisdiction. See Aguayo v. AMCO Insurance Co., 59 F. Supp. 3d at 1261 n.15 ("Moreover, as the Court is largely writing on a blank slate in interpreting the bad-faith exception, it sees no reason to read in a nonsensical double standard.").

McPhail v. Deere & Co. has already fleshed out a detailed framework for analyzing the amount-in-controversy requirement, and the JVCA's legislative history indicates that, far from abrogating McPhail v. Deere & Co., Congress intended § 1446(c)'s amount-in-controversy provisions to codify the approach that the Seventh Circuit chartered in Meridian Securities Insurance Co. v. Sadowski and that the Tenth Circuit advanced in McPhail v. Deere & Co., see Report to the Committee on the Judiciary of the United States House of Representatives § 103, at 15-16, H.R. 112-10 (2011)(citing only two cases under the heading "Amount in controversy and removal timing," McPhail v. Deere & Co. and Meridian Securities Insurance Co. v. Sadowski, and stating that the JVCA's amendments "follow the lead of [those] cases" (emphasis omitted)).[14]  On the

---

[14]The JVCA's legislative history provides:

Section 103(b)(3)(C) of the bill further amends subsection 1446(c) by inserting two new paragraphs, (2) and (3), to address issues relating to uncertainty of the amount in controversy when removal is sought, e.g., when state practice either does not require or permit the plaintiff to assert a sum claimed or allows the plaintiff to recover more than an amount asserted.  Although current practice allows defendants to claim that the jurisdictional amount is satisfied and remove, several issues complicate this practice.

First, circuits have adopted differing standards governing the burden of showing that the amount in controversy is satisfied.  The ''sum claimed'' and ''legal certainty'' standards that govern the amount in controversy requirement when a plaintiff originally files in Federal court have not translated well to removal, where the plaintiff often may not have been permitted to assert in state court a sum claimed or, if asserted, may not be bound by it.  Second, many defendants faced with uncertainty regarding the amount in controversy remove immediately -- rather than waiting until future developments provide needed clarification -- out of a concern that waiting and removing later will result in the removal's being deemed untimely.  In these cases, Federal judges often have difficulty ascertaining the true amount in controversy, particularly when removal is sought before discovery occurs.  As a result, judicial resources may be wasted and the proceedings delayed when little or no objective information accompanies the notice to remove.

Proposed new paragraph 1446(c)(2) allows a defendant to assert an amount in controversy in the notice of removal if the initial pleading seeks non-monetary

relief or a money judgment, in instances where the state practice either does not permit demand for a specific sum or permits recovery of damages in excess of the amount demanded. The removal will succeed if the district court finds by a preponderance of the evidence that the amount in controversy exceeds the amount specified in 28 U.S.C. § 1332(a), presently $75,000.

If the defendant lacks information with which to remove within the 30 days after the commencement of the action, the bill adds a new subparagraph 1446(c)(3)(A) to clarify that the defendant's right to take discovery in the state court can be used to help determine the amount in controversy. If a statement appears in response to discovery or information appears in the record of the state proceedings indicating that the amount in controversy exceeds the threshold amount, then proposed subparagraph 1446(c)(3)(A) deems it to be an ''other paper'' within the meaning of paragraph 1446(b)(3), thereby triggering a 30-day period in which to remove the action. The district court must still find by a preponderance of the evidence that the jurisdictional threshold has been met.

In adopting the preponderance standard, new paragraph 1446(c)(2) would follow the lead of recent cases. See McPhail v. Deere & Co., 529 F.3d 947 (10th Cir. 2008); Meridian Security Ins. Co. v. Sadowski, 441 F.3d 536 (7th Cir. 2006). As those cases recognize, defendants do not need to prove to a legal certainty that the amount in controversy requirement has been met. Rather, defendants may simply allege or assert that the jurisdictional threshold has been met. Discovery may be taken with regard to that question. In case of a dispute, the district court must make findings of jurisdictional fact to which the preponderance standard applies. If the defendant establishes by a preponderance of the evidence that the amount exceeds $75,000, the defendant, as proponent of Federal jurisdiction, will have met the burden of establishing jurisdictional facts.

Under proposed subparagraph 1446(c)(3)(B), if the notice of removal is filed more than one year after the commencement of the action, and a finding is made that the plaintiff deliberately failed to disclose the actual amount in controversy to prevent removal, that finding would be deemed bad faith under paragraph (1).

Section 103(b)(4)(A) of the bill inserts a heading for subsection 1446(d). Section 103(b)(4)(B) makes a technical amendment replacing ''thirty'' with ''30'' each place it appears in section 1446. Section 103(b)(4)(C) strikes current subsection (e) (a criminal removal provision, which is now codified as part of new section 1454). Section 103(b)(4)(D) redesignates current subsection (f) as new subsection (e), and inserts a new heading.

Report to the Committee on the Judiciary of the United States House of Representatives § 103, at 15, H.R. 112-10 (2011).

other hand, § 1446(c)'s text says nothing at all about the first requirement, and, before the Court issued its ruling in Aguayo v. AMCO Insurance Co., no court had attempted to comprehensively define it. The JVCA's legislative history gives the Court some clue as to the exception's basic nature, but, in answering this question -- what constitutes "bad faith" vis-à-vis improperly joining, or keeping joined, nondiverse parties or forum-citizen defendants -- the Court has staked out its own definition.

In Aguayo v. AMCO Insurance Co., the Court became the first federal court to comprehensively construe the new § 1446(c). There, the Court concluded that the bad-faith exception sets forth a two-step standard. See Aguayo v. AMCO Ins. Co., 59 F. Supp. 3d at 1262.

> For the reasons explained in the Analysis, the Court construes the bad-faith exception as a two-step standard. First, the Court inquires whether the plaintiff actively litigated against the removal spoiler in state court: asserting valid claims, taking discovery, negotiating settlement, seeking default judgments if the defendant does not answer the complaint, et cetera. Failure to actively litigate against the removal spoiler will be deemed bad faith; actively litigating against the removal spoiler, however, will create a rebuttable presumption of good faith. Second, the defendant may attempt to rebut this presumption with evidence already in the defendant's possession that establishes that, despite the plaintiff's active litigation against the removal spoiler, the plaintiff would not have named the removal spoiler or would have dropped the spoiler before the one-year mark but for the plaintiff's desire to keep the case in state court. The defendant may introduce direct evidence of the plaintiff's bad faith at this stage -- e.g., electronic mail transmissions in which the plaintiff states that he or she is only keeping the removal spoiler joined to defeat removal -- but will not receive discovery or an evidentiary hearing in federal court to obtain such evidence.

Aguayo v. AMCO Ins. Co., 59 F. Supp. 3d at 1262-63.

---

District courts in other Circuits may need to grapple with the extent to which the JVCA codifies the McPhail v. Deere & Co. approach. The Court, however, is in the Tenth Circuit, and McPhail v. Deere & Co. binds it unless intervening statute or Supreme Court case law invalidates the holding. The JVCA's legislative history makes it clear that McPhail v. Deere & Co. remains intact.

**LAW REGARDING IMPLIED STATUTORY PRIVATE RIGHTS OF ACTION**

When a party seeks to enforce a statute that provides no express mechanism for its enforcement, a court must examine whether a cause of action may be implied through the common law. See Starko, Inc. v. Presbyterian Health Plan, Inc., 2012-NMCA-053, ¶ 33, 276 P.3d 252, 264-65. In Alexander v. Sandoval, 532 U.S. 275 (2001), the Supreme Court of the United States held: "Like substantive federal law itself, private rights of action to enforce federal law must be created by Congress." 532 U.S. at 286 (citation omitted). The Supreme Court explained: "The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy." Alexander v. Sandoval, 532 U.S. at 286 (citation omitted). "Statutory intent on this latter point is determinative," and "[w]ithout it, a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." Alexander v. Sandoval, 532 U.S. at 286-87 (citations omitted).

The federal test for determining whether legislative intent exists is set forth in Cort v. Ash, 422 U.S. 66, 78 (1975). See Alexander v. Sandoval, 532 U.S. at 287. In Cort v. Ash, the Supreme Court set forth the test for determining whether to recognize an implied private cause of action:

> First, is the plaintiff one of the class for whose especial benefit the statute was enacted -- that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff?

Cort v. Ash, 422 U.S. at 78 (internal quotation marks and citations omitted). See also Nat'l Trust for Historical Pres. v. City of Albuquerque, 1994-NMCA-057, 874 P.2d 798, 801 (citing Cort. v. Ash, 422 U.S. at 78).

The Supreme Court has recognized, however, that the standard for discerning whether state statutes create private rights of action is less stringent than the federal standard: "Raising up causes of action where a statute has not created them may be a proper function for common-law courts, but not for federal tribunals."  Alexander v. Sandoval, 532 U.S. at 287.  In recognition of this distinction between federal and state statutes, the Court of Appeals of New Mexico in National Trust for Historical Preservation v. City of Albuquerque rejected the argument that the federal test articulated in Cort v. Ash exclusively applies to determine whether an implied private right of action under a state statute exists.  See 1994-NMCA-057, ¶¶ 6-10, 874 P.2d at 801.  The Court of Appeals of New Mexico applied a less stringent standard for implying a private right of action from a state statute.  See 1994-NMCA-057, ¶¶ 11-12, 874 P.2d at 801.  In adopting this standard, the Court of Appeals of New Mexico explained that a "state court, because it possesses common-law authority, has significantly greater power than a federal court to recognize a cause of action not explicitly expressed in a statute."  1994-NMCA-057, ¶ 10, 874 P.2d at 801-02.  The Court of Appeals of New Mexico rejected the notion that statutory intent alone is determinative and instead held that a New Mexico court may "look beyond legislative intent in exercising common-law authority to recognize a private cause of action."  1994-NMCA-057, ¶ 10, 874 P.2d at 801.  The Court of Appeals of New Mexico explained that "a common-law court may utilize the statute solely to demonstrate what is public policy," and the "public policy then forms the predicate for a common-law cause of action."  1994-NMCA-057, ¶ 10, 874 P.2d at 801 (citations omitted).  The Supreme Court of New Mexico has advanced the proposition that a state court may imply a private right of action based upon public policy, and not legislative intent, and has cited National Trust for Historical Preservation v. City of Albuquerque in support of this proposition.  "[F]ederal courts do not presume that Congress intended for the common law to apply when interpreting a statute, . . .

'a state court, because it possesses common-law authority, has significantly greater power than a federal court to recognize a cause of action not explicitly expressed in a statute' and may do so in order to further public policy."  See San Juan Agric. Water Users Ass'n v. KNME-TV, 2011-NMSC-011, ¶ 40, 257 P.3d 884, 893 (quoting Nat'l Trust for Historical Pres. v. City of Albuquerque, 1994-NMCA-057, ¶ 10, 874 P.2d at 801-02).

The National Trust for Historical Preservation v. City of Albuquerque court held that the federal legislative intent test articulated in Cort v. Ash did not control, because that test "was developed to assist in the interpretation of federal statutes," and "[d]ifferent considerations arise when state courts decide matters of state law."  1994-NMCA-057, ¶ 8, 874 P.2d at 801.  One such consideration stems from the fact that "[f]ederal courts have very limited authority beyond that conferred by statute or the Constitution.  As the United States Supreme Court has stated, 'The instances where we have created federal common law are few and restricted.'"  1994-NMCA-057, ¶ 9, 874 P.2d at 801 (quoting Wheeldin v. Wheeler, 373 U.S. 647, 651 (1963)).  Thus, the Cort v. Ash test essentially is a test to determine whether Congress intended to create, either expressly or by implication, a private cause of action.  See Nat'l Trust for Historical Pres. v. City of Albuquerque, 1994-NMCA-057, ¶¶ 7-11, 874 P.2d at 801 (citation omitted).  The Court of Appeals of New Mexico explained that the Cort v. Ash factors are not irrelevant to the question whether a private right of action exists under a state statute, but rather that they are not exclusive.  See Nat'l Trust for Historical Pres. v. City of Albuquerque, 1994-NMCA-057, ¶¶ 7-11, 874 P.2d at 801 (citation omitted).  Instead, "a state's public policy, independent of the first three Cort v. Ash factors, may be determinative in deciding whether to recognize a cause of action."  See Nat'l Trust for Historical Pres. v. City of Albuquerque, 1994-NMCA-057, ¶ 11, 874 P.2d at 801 (citation omitted).

## LAW REGARDING RELIANCE ON THE COURT OF APPEALS OF NEW MEXICO'S CASELAW

The Court considers Court of Appeals of New Mexico's opinions with the understanding that, while the Court "certainly may and will consider the Court of Appeal[s'] decision in making its determination, the Court is not bound by the Court of Appeal[s'] decision in the same way that it would be bound by a Supreme Court decision." Mosley v. Titus, 762 F. Supp. 2d 1298, 1332 (D.N.M. 2010)(Browning, J.)(alterations added)(noting that, where the only opinion on point is "from the Court of Appeals, [] the Court's task, as a federal district court sitting in this district, is to predict what the Supreme Court of New Mexico would do if the case were presented to it")(citing Wade v. EMCASCO Ins. Co., 483 F.3d 657, 666 (10th Cir. 2007)(explaining that, "[w]here no controlling state decision exists, the federal court must attempt to predict what the state's highest court would do," and that, "[i]n doing so, it may seek guidance from decisions rendered by lower courts in the relevant state")).

The Supreme Court has addressed what the federal courts may use when there is not a decision on point from the state's highest court. In the past, the Supreme Court directed federal courts, in the absence of controlling authority from the highest state court, to follow intermediate state court decisions:

> The highest state court is the final authority on state law, but it is still the duty of the federal courts, where the state law supplies the rule of decision, to ascertain and apply that law even though it has not been expounded by the highest court of the State. An intermediate state court in declaring and applying the state law is acting as an organ of the State and its determination, in the absence of more convincing evidence of what the state law is, should be followed by a federal court in deciding a state question. We have declared that principle in West v. American Telephone and Telegraph Co., 311 U.S. 223 (1940), decided this day. It is true that in that case an intermediate appellate court of the State had determined the immediate question as between the same parties in a prior suit, and the highest state court had refused to review the lower court's decision, but we set forth the broader principle as applicable to the decision of an intermediate court, in the absence of a decision

by the highest court, whether the question is one of statute or common law. . . .  The question has practical aspects of great importance in the proper administration of justice in the federal courts.  It is inadmissible that there should be one rule of state law for litigants in the state courts and another rule for litigants who bring the same question before the federal courts owing to the circumstance of diversity of citizenship.  In the absence of any contrary showing, the rule [set forth by two New Jersey trial courts, but no appellate courts] appears to be the one which would be applied in litigation in the state court, and whether believed to be sound or unsound, it should have been followed by the Circuit Court of Appeals.

Fid. Union Trust Co. v. Field, 311 U.S. 169, 177-80 (1940)(footnotes and citations omitted).

"The Supreme Court has softened this position over the years."  Anderson Living Trust v. WPX Energy Prod., LLC, 27 F. Supp. 3d 1188, 1243 (D.N.M. 2014)(Browning, J.).  Federal courts are no longer bound by state trial or intermediate court opinions, but "should attribute [them] some weight . . . where the highest court of the State has not spoken on the point."  Comm'r v. Estate of Bosch, 387 U.S. 456, 465 (1967)(citing King v. Order of United Commercial Travelers, 333 U.S. 153, 159 (1948)).  See 17A James Wm. Moore et al., Moore's Federal Practice § 124.20[2], at 124-75 (3d ed. 1999)("Decisions of intermediate state appellate courts usually must be followed . . . [and] federal courts should give some weight to state trial courts decisions.")(emphasis and title case omitted).  See also Anderson Living Trust v. WPX Energy Prod., LLC, 27 F. Supp. 3d at 1243; Mosley v. Titus, 762 F. Supp. 2d at 1332.

## ANALYSIS

The Court does not have subject-matter jurisdiction over this case.  The parties are not diverse, and the Defendants have not demonstrated that there is no possibility that the Baileys would be able to establish a cause of action against Atchinson and Plumbsquare Construction.  The Defendants thus have not shown that the Baileys fraudulently joined Atchinson and Plumbsquare Construction in this action.  Accordingly, the Court grants the Motion to Remand and leaves the Motion to Dismiss for the state court to decide.

# I.    **THE PARTIES ARE NOT COMPLETELY DIVERSE**.

The Baileys argue that the parties are not diverse, because the Baileys, Atchinson, and Plumbsquare Construction are New Mexico citizens.  See Motion to Remand at 2, 12.  Markham and Voltaire Builders admit that the Court will not have diversity jurisdiction if it does not dismiss Atchinson and Plumbsquare Construction.  See Voltaire Remand Response at 2; Notice of Removal ¶¶ 12-21, at 4-6.  The Court agrees that the parties are not diverse.  "Subject-matter jurisdiction under 28 U.S.C. § 1332(a)(1) requires: (i) complete diversity among the parties; and (ii) that 'the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.'"  Thompson v. Intel Corp., 2012 WL 3860748, at *12 (quoting 28 U.S.C. § 1332(a)).  As the Court has previously explained, "[t]he Supreme Court of the United States has described this statutory diversity requirement as 'complete diversity,' and it is present only when no party on one side of a dispute shares citizenship with any party on the other side of a dispute."  McEntire v. Kmart Corp., 2010 WL 553443, at *3 (quoting McPhail v. Deere & Co., 529 F.3d at 951).  See Strawbridge v. Curtiss, 7 U.S. (3 Cranch) at 267-68.  Whereas Markham, Barrientos, and Voltaire Builders are Texas citizens, see Notice of Removal ¶¶ 14-16, at 4-5; Complaint ¶¶ 2-4, at 15, the Baileys, Atchinson, and Plumbsquare Construction are New Mexico citizens, see Complaint ¶¶ 1, 5-6, at 15-16; Notice of Removal ¶¶ 18-19, at 5; Motion to Remand at 2.  Because the Baileys, Atchinson, and Plumbsquare Construction are New Mexico citizens, the parties on one side of the dispute share citizenship with some of the other side's parties.  Accordingly, the parties do not satisfy 28 U.S.C. § 1332(a)'s complete diversity requirement.

## II. THE DEFENDANTS HAVE NOT ESTABLISHED FRAUDULENT JOINDER OF ATCHINSON AND PLUMBSQAURE CONSTRUCTION, BECAUSE THERE IS A POSSIBILITY THAT THE BAILEYS WOULD BE ABLE TO BRING A CAUSE OF ACTION AGAINST ATCHINSON AND PLUMBSQUARE CONSTRUCTION.

In the Notice of Removal, Markham and Voltaire Builders argue that Atchinson and Plumbsquare Construction "were improperly and fraudulently joined," and that the "sole function" of joining Atchinson and Plumbsquare Construction "is to defeat diversity jurisdiction."  Notice of Removal ¶¶ 20-21, at 6.  Markham and Voltaire Builders aver that the Baileys admit that Atchinson and Plumbsquare Construction "have no role in the . . . events" of which they complain. Notice of Removal ¶ 24, at 7.  According to Markham and Voltaire Builders, the Baileys "do not allege any act or omission committed by Defendants Atchinson and Plumbsquare," and "rely on baseless and unsupported assumptions regarding Defendants Atchinson and Plumbsquare." Notice of Removal ¶¶ 32-33, at 10.  Markham and Voltaire Builders argue that, "[w]ith no actionable misconduct or other breach of a duty to Plaintiffs, and no actionable right of action or recovery against Defendants Atchinson and Plumbsquare, Plaintiffs cannot support any claim of civil conspiracy as against them."  Notice of Removal ¶ 26, at 8.  Markham and Voltaire Builders incorporate the arguments that Atchinson and Plumbsquare Construction make in the Motion to Dismiss as a basis why the Baileys cannot state a claim against Atchinson and Plumbsquare Construction.  See Notice of Removal ¶ 28, at 8-9; Voltaire Remand Response at 2 ("The Voltaire Defendants respectfully request that this Court dismiss [Atchinson and Plumbsquare Construction], for the reasons contained in their motion to dismiss.").[15]

_____

[15]Atchinson and Plumbsquare Construction do not take a position on the Motion to Remand's merits, but they argue:

> Given that the motion to dismiss will play a central role in whether there is diversity among the parties and potentially avoid further time for the parties and the court

Although Atchinson and Plumbsquare Construction do not take a position on the Motion to Remand, see Plumbsquare Remand Response at 1, they request that the Court dismiss them from the case, because the Baileys fail to state a claim upon which relief can be granted, see Motion to Dismiss at 2-3. Atchinson and Plumbsquare Construction acknowledge that, if the Court does not dismiss the claims against them, "then complete diversity would not exist between the parties." Plumbsquare Remand Response at 1. As mentioned above, Markham and Voltaire Builders' fraudulent joinder argument incorporates, and "principally rel[ies]" on, Atchinson and Plumbsquare's arguments for dismissal. Voltaire Remand Response at 1. Atchinson and Plumbsquare Construction offer two bases for dismissal: (i) they argue that the Baileys "cannot satisfy the requirements for a cause of action for civil conspiracy"; and (ii) they argue that the Construction Industries Licensing Act does not grant individuals a private right of action against unlicensed contractors. Motion to Dismiss at 2-3. Atchinson and Plumbsquare Construction maintain that the Baileys cannot establish that "Plumbsquare committed some independent, unlawful act" that caused harm, Motion to Dismiss at 3 (citing Ettenson v. Burke, 2001-NMCA-003, ¶ 12, 17 P.3d at 445), and thus the Baileys "cannot satisfy the requirements for a claim of civil conspiracy," Motion to Dismiss at 4. The Baileys also argue that, in an unpublished opinion, the Court of Appeals of New Mexico "determined that the Construction Industries Licensing Act does not grant a private right of action to pursue the licensed contractor for the acts of an unlicensed contractor acting in his name." Motion to Dismiss at 3 (citing S & H Dev., LLC v. Parker, 2017

---

over the proper forum for this litigat5ion [sic], Plumbsquare would ask that it be resolved prior to any ruling on the motion for remand.

Plumbsquare Remand Response at 1.

WL 3485065, ¶ 10, at *5).  According to Atchinson and Plumbsquare Construction, in S & H Dev.,

LLC v. Parker, the Court of Appeals of New Mexico held:

> "While an ultimate purpose of the Act is to protect the public from unqualified
> contractors, . . . the Act appropriately and adequately provides measures that civilly
> and criminally punish violators. . . .  We see no legislative intent to afford relief
> beyond those measures under the circumstances in this case.  We hold that there
> exists no basis on which to imply a private right of action under the Act here."

Motion to Dismiss at 4 (quoting S & H Dev., LLC v. Parker, 2017 WL 3485065, ¶ 10,

at *5)(alterations in Motion to Dismiss).

The Baileys argue that Markham and Voltaire Builders' reliance on the Motion to Dismiss

for the purposes of establishing fraudulent joinder is "misplaced" and "legally insufficient,"

because the "burden of proof here is far greater than the standard for a motion to dismiss under

Rule 12."  Remand Reply at 2-3.  The Baileys contend that, because their claims involve an

"'intricate analysis of state law,'" their claims may not "'be disregarded for purposes of diversity

jurisdiction.'"  Motion to Remand at 9 (quoting Montano v. Allstate Indem. Co., 211 F.3d 1278,

2000 WL 525592, at *2).  The Baileys assert that Atchinson and Plumbsquare Construction "must

not only allege but must prove 'there is *no possibility* of recovery by the plaintiff' against them,

which means 'there is *no* reasonable basis for the district court to predict that the plaintiff *might*

be able to recover' against said defendant."  Motion to Remand at 10 (quoting Bio-Tec Envtl.,

LLC v. Adams, 792 F. Supp. 2d at 1216)(emphasis in Motion to Remand but not in Bio-Tec Envtl.,

LLC v. Adams).  According to the Baileys, Atchinson and Plumbsquare Construction "have failed

to prove that there is no possibility that Plaintiffs might recover against them, and have, thus, failed

to carry their heavy burden.  This case must, therefore, be remanded."  Motion to Remand at 10.

In addressing Atchinson and Plumbsquare Construction's arguments for dismissal for

failure to state a claim, the Baileys maintain that their "civil conspiracy claim rests on a valid

underlying cause of action, the defrauding of the Baileys by the Defendants, for which [Atchinson and Plumbsquare Construction] can be held liable jointly and severally individually along with the other Defendants." MTD Response at 7. The Baileys assert that "their factual allegations support the independent tort of fraud" and that their claims warrant piercing Plumbsquare Construction's corporate veil "to reach the licensee who committed the bad acts that damaged [them]." Motion to Remand at 8. The Baileys note that S & H Dev., LLC v. Parker is a "non-precedential opinion from the New Mexico Court of Appeals that . . . was not published and therefor has no precedential value to the Court or the parties." MTD Response at 8 (citing Gormley v. Coca-Cola Enters., 2004-NMCA-021, ¶ 10, 85 P.3d at 255-56). The Baileys further argue that S & H Dev., LLC v. Parker is "inapposite," because it "does not apply to a dismissal under Rule 12 [of the Federal Rules of Civil Procedure]." Motion to Remand at 7. According to the Baileys, S & H Dev., LLC v. Parker "does not require dismissal," because the case "was not dismissed," and "was tried before the court and the parties were allowed to request findings and conclusions." MTD Response at 8. The Baileys assert that "[i]t is clear that the reason the Court of Appeals did not authorize that case to be precedential was based [on] the unique circumstances under the record in that case." MTD Response at 9.

At the September 6, 2019, hearing, the Court allowed the parties to argue the Motion to Dismiss and the Motion to Remand together. See Tr. at 6:2 (Court). The Court said that the parties can "argue these [motions] together because they're closely related, so I'm inclined to take up the motion to remand which I think built into it is the issue of whether the plaintiffs state a claim against Mr. Atchinson and Plumbsquare." Tr. at 6:2-7 (Court). The Baileys argued that the burden of proof falls on the Defendants to establish fraudulent joinder. See Tr. at 9:5-8 (McKelvy). According to the Baileys, the Defendants "must demonstrate there is no possibility that a plaintiff

would be able to establish a cause of action against the joined party in state court." Tr. at 9:5-8 (McKelvy)(citing Bio-Tec Envtl., LLC v. Adams, 792 F. Supp. 2d at 1214). The Baileys argued that the fraudulent-joinder standard is higher than the motion-to-dismiss standard, and thus they contend that "the Court can't really consider the motion to dismiss in isolation, but must consider the motion to dismiss to see if it does involve an intricate analysis of case law, which as the Court has seemed to recognize it does." Tr. at 9:9-13 (McKelvy). The Baileys stressed that, because S & H Dev., LLC v. Parker is an unpublished opinion, it is "not precedential" and "not controlling authority." Tr. at 10:4-5 (McKelvy). According to the Baileys, when there is no "clear controlling precedent" on a state law issue, remand is proper, "because there could be further review by the state appellate courts who are in a better position to deal with those state issues." Tr. at 10:10-14 (McKelvy).

Markham and Voltaire Builders acknowledged that, in responding to the Motion to Remand, they "punt[ed] back to the Atchinson's motion to dismiss." Tr. at 18:15-16 (Ragsdale). Markham and Voltaire Builders said that their "position is that [Atchinson and Plumbsquare Construction] had nothing to do with Mr. Bailey; Mr. Atchinson has never met Mr. Bailey. He had no contract with him whatsoever. So therefore there [] is no possibility of a claim against him." Tr. at 18:18-22 (Ragsdale). Atchinson and Plumbsquare Construction take no position on the Motion to Remand, and they posited at the hearing that whether the Court should remand the case or keep the case in federal court, and dismiss Atchinson and Plumbsquare Construction, comes down to the "relation between" the Motion to Dismiss and the Motion to Remand. Tr. at 19:16 (Calvert). Atchinson and Plumbsquare Construction asked that the Court remand the case "to state court for the state court to deal with the motion to dismiss," if the Court is uncertain about the Motion to Dismiss. Tr. at 19:19-21 (Calvert). Turning to their dismissal arguments, Atchinson

and Plumbsquare Construction argued that the plaintiffs in <u>S & H Dev., LLC v. Parker</u> "raised the same claims that [the Baileys] are raising here." Tr. 22:25-23:1 (Calvert). Atchinson and Plumbsquare Construction reiterated that the Court of Appeals of New Mexico said the Construction Industries Licensing Act provides no basis for the claims. <u>See</u> Tr. at 23:1-2 (Calvert). According to Atchinson and Plumbsquare Construction, based on <u>S & H Dev., LLC v. Parker</u>, the penalty for a licensed contractor aiding an unlicensed contractor is a "fine and potential action against the licensed [contractor's] license. Not a private right of action." Tr. at 24:1-3 (Calvert).

The Court concludes that Markham and Voltaire Builders have not established fraudulent joinder, because they have not demonstrated that there is no possibility that the Baileys will be able to bring a cause of action against Atchinson and Plumbsquare Construction. The Baileys' restitution claim against the Defendants for violating the Construction Industries Licensing Act is based on a civil conspiracy theory. <u>See</u> Complaint ¶¶ 65-76, at 21-23. Plumbsquare Construction is a licensed contractor, <u>see</u> Complaint ¶ 32, at 18; Motion to Dismiss at 2, whereas Markham, Barrientos, and Voltaire Builders are unlicensed contractors, <u>see</u> Complaint ¶¶ 36-38, at 18; Motion to Dismiss at 1. The Baileys allege that Markham, Barrientos, and Voltaire Builders "would have been unable to fraudulently induce Plaintiffs to . . . accept the illegal services of an unlicensed contractor" without Atchinson and Plumbsquare. Complaint ¶ 70, at 22. The Baileys further allege that the "actions of Atchinson/Plumbsquare enabled Markham/Barrientos/Voltaire to conduct activities that the [Construction Industries Licensing] Act was expressly created to preclude." Complaint ¶ 71, at 22. According to the Baileys, "Markham, Barrientos, Voltaire, Atchinson and Plumbsquare, as joint tortfeasors and co-conspirators, are jointly and severally liable to Plaintiffs for the restitution of all moneys paid for unlicensed contracting directly arising from their fraudulent conspiracy directed Plaintiffs." Complaint ¶ 74, at 22.

Whether the Baileys are able to bring a cause of action against Atchinson and Plumbsquare for violating the Construction Industries Licensing Act based on a conspiracy theory first depends on whether the Construction Industries Licensing Act gives plaintiffs a right of action to sue a licensed contractor for the acts of an unlicensed contractor acting in the licensed contractor's name. If the Defendants prove that there is no private right of action to sue a licensed contractor under the Construction Industries Licensing Act, then Defendants can establish fraudulent joinder. See Bio-Tec Envtl., LLC v. Adams, 792 F. Supp. 2d at 1216 (concluding that, "to establish that a party was fraudulently joined, a defendant has the burden of demonstrating that 'there is no possibility that the plaintiff would be able to establish a cause action'" (quoting Zufelt v. Isuzu Motors Am., L.C.C., 727 F. Supp. 2d at 1124-25)). Without a private right of action, the Baileys cannot bring properly a claim against Atchinson and Plumbsquare Construction.

The Court concludes that determining the threshold issue -- whether the Construction Industries Licensing Act provides a right of action for plaintiffs to sue licensed contractors based on a conspiracy theory -- would require the Court to undertake an "'intricate analysis of state law.'" Montano v. Allstate Indem., 211 F.3d 1278, 2000 WL 525592, at *2 (quoting Batoff v. State Farm Ins. Co., 977 F.2d at 851-53). In Montano v. Allstate Indemnity Co., the Tenth Circuit held that the "party asserting fraudulent joinder" has a "heavy burden" and that the fraudulent-joinder standard "is more exacting than that for dismissing a claim under Fed. R. Civ. P. 12 (b)(6); indeed, the latter entails the kind of merits determination that, absent fraudulent joinder, should be left to the state court where the action was commenced." 211 F.3d 1278, 2000 WL 525592, at *2. The Supreme Court of New Mexico has not ruled whether the Construction Industries Licensing Act provides plaintiffs a cause of action to sue licensed contractors based on a conspiracy theory. Although the Court of Appeals of New Mexico has determined that the Construction Industries

Licensing Act provides no explicit or implicit cause of action to sue licensed contractors under a conspiracy theory, see S & H Dev., LLC v. Parker, 2017 WL 3485065, ¶ 10, at *5, the Court of Appeals of New Mexico's opinion is unpublished and thus non-precedential, see State of N.M. Uninsured Employers' Fund v. Gallegos, 2017-NMCA-044, ¶ 18 n.3, 395 P.3d 533, 538 n.3; Gormley v. Coca-Colar Enters., 2004-NMCA-021, ¶ 10, 85 P.3d at 255-56. At the September 6, 2019, hearing, the Court explained that it must make an Erie prediction about how the Supreme Court of New Mexico would rule on this issue. See Tr. at 6:18-22 (Court). The Court said that it is not sure whether its Erie prediction "of what the Supreme Court [of New Mexico] would do would line-up with what" the Court of Appeals of New Mexico did in S & H Dev., LLC v. Parker. Tr. at 6:18-20 (Court). The Court expressed that the uncertainty and unsettled nature of the law "tells me there is enough of an issue there that I shouldn't say that there has been fraudulent joinder." Tr. at 6:21-22 (Court). As the Court noted in Bio-Tec Environmental, LLC v. Adams, "'[i]n evaluating fraudulent joinder claims, [the Court] must initially resolve all disputed questions of fact and all ambiguities in the controlling law in favor of the non-removing party.'" Bio-Tec Envtl., LLC v. Adams, 792 F. Supp. 2d at 1215 (quoting Montano v. Allstate Indem. Co., 211 F.3d 1278, 2000 WL 525592, at *4-5). Because it is not established whether the Construction Industries Licensing Act provides a right of action for plaintiffs to sue licensed contractors, based on a conspiracy theory or otherwise, the Court must resolve this uncertainty in the Baileys' favor. Accordingly, the Court concludes that there is a possibility that the Construction Industries Licensing Act provides the Baileys a right of action to sue Atchinson and Plumbsquare Construction.[16]

---

[16]Although the Court concludes that determining whether the Construction Industries Licensing Act provides a right of action for plaintiffs to sue licensed contractors based on a

conspiracy theory would require an intricate analysis of state law and thus the Court should remand the case, the Court predicts that the Supreme Court of New Mexico would likely imply a private right of action under the Construction Industries Licensing Act. Three sections of the Construction Industries Licensing Act mention the torts of aiding, abetting, or conspiring. First, § 60-13-23 says that a contractor's license "shall be revoked or suspended" for

> aiding, abetting, combining or conspiring with a person to evade or violate the provisions of the Construction Industries Licensing Act by allowing a contractor's license to be used by an unlicensed person, or acting as agent, partner, associate or otherwise in connection with an unlicensed person, with the intent to evade the provisions of the Construction Industries Licensing Act.

N.M. Stat. Ann. § 60-13-23(J). Second, § 60-13-24 says that a contractor's "certificate of qualification or statewide inspector's certificate shall be revoked or suspended" for "aiding, abetting, combining or conspiring with a person to evade or violate the provisions of the Construction Industries Licensing Act or any code, minimum standard, rule or regulation adopted pursuant to that act." N.M. Stat. Ann. § 60-13-24(C). Third, § 60-13-36(C) says that the New Mexico Construction Industries Commission "may revoke any certificate of competence" for "aiding, abetting, combining or conspiring with a person to evade or violate the provisions of the Construction Industries Licensing Act or any code, minimum standard, rule or regulation adopted pursuant thereto." N.M. Stat. Ann. § 60-13-36(C)(3). None of these statutory sections provides an explicit private right of action, so the Court must determine whether to imply a private right of action based on New Mexico caselaw.

The Court concludes that the Supreme Court of New Mexico likely would imply a private right of action under the Construction Industries Licensing Act. The Supreme Court of New Mexico has ruled that its "determination of whether to imply a private cause of action is influenced by three of four factors set out in *Cort v. Ash*, 422 U.S. 66, 78 . . . (1975)." Yedidag v. Roswell Clinic Corp., 2015-NMSC-012, ¶ 31, 346 P.3d 1136, 1146. These three factors include:

> "(1) Was the statute enacted for the special benefit of a class of which the plaintiff is a member? (2) Is there any indication of legislative intent, explicit or implicit, to create or deny a private remedy? [and] (3) Would a private remedy either frustrate or assist the underlying purpose of the legislative scheme?"

Yedidag v. Roswell Clinic Corp., 2015-NMSC-012, ¶ 31, 346 P.3d at 1146 (quoting Nat'l Tr. for Historic Pres. v. City of Albuquerque, 1994-NMCA-057, ¶¶ 7, 11, 874 P.2d 798)(alteration in Yedidag v. Roswell Clinic Corp.). The first factor weighs in the Baileys' favor. Section 60-30-1.1 of the Construction Industries Licensing Act states: "The purpose of the Construction Industries Licensing Act is to promote the general welfare of the people of New Mexico by providing for the protection of life and property by adopting and enforcing codes and standards for construction, alteration, installation, connection, demolition and repair work." N.M. Stat. Ann. § 60-30-1.1. Because the Baileys are New Mexico property owners who sought construction services, they are members of the class for whose special benefit the statute was enacted. See Yedidag v. Roswell Clinic Corp., 2015-NMSC-012, ¶ 31, 346 P.3d at 1146.

Second, the Court concludes that the Construction Industries Licensing Act's stated public policy rationales and purpose implicitly indicate that the Legislature of New Mexico intended to create a private remedy.  In Tafoya v. Rael, 2008-NMSC-057, 193 P.3d 551, the Supreme Court of New Mexico underscored that the Construction Industries Licensing Act's "statutory provisions indicate a strong legislative choice for the protection of the public to require construction contractors to be licensed and qualified to do the work they are hired to perform." 2008-NMSC-057, ¶ 17, 193 P.3d at 555.  The Supreme Court of New Mexico also noted, however, that the Construction Industries Licensing Act's "policies . . . extend beyond requiring all those who engage in construction contracting activities to be licensed."  Tafoya v. Rael, 2008-NMSC-057, ¶ 20, 193 P.3d at 556.

> Section 60-13-23 subjects those licensed contractors who intentionally evade the requirements of the [Construction Industries Licensing Act] by working in connection with unlicensed persons to suspension or revocation of their license. Thus, the policies expressed in the [Construction Industries Licensing Act] clearly encompass not only unlicensed individuals or businesses, but also licensed individuals or businesses who knowingly hire unlicensed independent contractors to do work that requires a license and compliance with applicable regulations and codes.  Recognizing the duty on the part of general contractors for which Plaintiff advocates in this case furthers such policies.

Tafoya v. Rael, 2008-NMSC-057, ¶ 20, 193 P.3d at 556.  The Construction Industries Licensing Act's broad scope for imposing fines and penalties indicates that the Legislature of New Mexico likely intended for New Mexico consumers to be able to sue licensed contractors who help unlicensed contractors procure work.

Finally, the Court concludes that allowing a private remedy would assist the Construction Industries Licensing Act's purpose.  In Mascarenas v. Jaramillo, the Supreme Court of New Mexico held that "allowing recovery of payments made on a contract to an unlicensed construction contractor serves and advances the purpose of the [Construction Industries Licensing] Act." 1991-NMSC-014, ¶ 16, 806 P.2d 59, 63.  The Supreme Court of New Mexico reasoned:

> The practical effect of our decision will be to further inhibit unlicensed contractors from engaging in construction work without a license.  Section 60-13-30(A) prohibits an unlicensed contractor from using the courts of this state to collect compensation for his work, no matter how expertly performed.  He could, however, evade the harsh consequences of Section 60-13-30(A) by collecting most or all of the contract price before significant commencement of performance.  Our ruling today effectively ends this sort of practice.

Mascarenas v. Jaramillo, 1991-NMSC-014, ¶ 16, 806 P.2d at 63.  The Supreme Court of New Mexico emphasized that the Construction Industries Licensing Act's public policy rationales are "so strong" that consumer knowledge of a contractor's licensing status "is of no consequence" for the purposes of recovering payments.  Mascarenas v. Jaramillo, 1991-NMSC-014, ¶ 16, 806 P.2d at 63.  Without Atchinson and Plumbsquare Construction allowing Markham, Barrientos, and

Voltaire Builders to pull their permit, as the Baileys allege, <u>see</u> Complaint ¶¶ 69-72, at 22, the Baileys would have been less likely to enlist Markham, Barrientos, and Voltaire Builders' construction services. That the Baileys did not know that Markham, Barrientos, and Voltaire Builders were operating under Atchinson and Plumbsquare Construction is of no consequence. Allowing the Baileys to recover against licensed contractors who lend their license to unlicensed contractors will assist in furthering the Construction Industries Licensing Act's purpose. <u>See</u> <u>Yedidag v. Roswell Clinic Corp.</u>, 2015-NMSC-012, ¶ 31, 346 P.3d at 1146.

The Court concludes that all three factors weigh in favor of implying a private right of action for consumers to sue licensed contractors for violating the Construction Industries Licensing Act based on a civil conspiracy theory. Although the Court is remanding the case and not ruling on the Motion to Dismiss, the Court is persuaded that the Baileys successfully state a claim upon which relief may be granted. <u>See</u> <u>Mobley v. McCormick</u>, 40 F.3d 337, 340 (10th Cir. 1994)("The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." (citing <u>Williams v. Meese</u>, 926 F.2d 994, 997 (10th Cir. 1991)). Moreover, even if the Supreme Court of New Mexico would not imply a right of action in this case, the Baileys also claim that Atchinson and Plumbsquare are jointly and severally liable with Markham, Barrientos, and Voltaire Builders for forming a joint venture. <u>See</u> MTD Response at 11 (citing Complaint ¶¶ 41, 67, 74, at 18-19, 21-22). As the Baileys argue, a joint venture is a partnership under New Mexico law, and the "partnership is liable for a partner's actionable conduct, 'for loss or injury caused to a person, or for a <u>penalty incurred</u>, as a result of a wrongful act.'" MTD Response at 10 (quoting N.M. Stat. Ann. § 54-1A-305(a))(emphasis in MTD Response and not in statute). The Supreme Court of New Mexico allows "recovery of payments made on a contract to an unlicensed construction contractor," <u>Mascarenas v. Jaramillo</u>, 1991-NMSC-014, ¶ 16, 806 P.2d at 63, and the Baileys therefore may recover payments made to Markham, Barrientos, and Voltaire Builders for the alleged actions that violate the Construction Industries Licensing Act. Construing the Bailey's joint-venture allegations as true for the purposes of deciding the Motion to Dismiss, <u>see</u> <u>Tellabs, Inc. v. Makor Issues & Rights, Ltd.</u>, 551 U.S. 308, 322-23 (2007), the Court further concludes that the Complaint contains sufficient "facts that, if assumed to be true, state a claim to relief that is plausible on its face," <u>Mink v. Knox</u>, 613 F.3d 995, 1000 (10th Cir. 2010)(citing <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009)). Although the Court is not ruling on the Motion to Dismiss, if the Court were to deny the Motion to Remand, the Court would deny to the Motion to Dismiss.

The Court further notes that, if it were writing on a clean slate, which it is not, it would not imply a cause of action. Since the late 1970s, the federal courts have backed away from <u>Cort v. Ash</u>, and for good reason. <u>See</u>, <u>e.g.</u>, <u>Armstrong v. Exceptional Child Ctr., Inc.</u>, 575 U.S. 320, 328 (2015); <u>Alexander v. Sandoval</u>, 532 U.S. 275, 287-88 (2001); <u>Touche Ross & Co v. Redington</u>, 442 US 560, 570 (1979); <u>Transamerica Mortg. Advisors, Inc v Lewis</u>, 444 US 11, 19-24 (1979); Cass R. Sunstein, <u>Section 1983 and the Private Enforcement of Federal Law</u>, 49 U. Chi. L. Rev. 394, 413 (1982)(explaining that, beginning in the late 1970s, the Supreme Court "sharply restricted the availability of private rights of action, effectively abandoning the approach of [<u>J.I. Case Co. v Borak</u>, 377 US 426, 433 (1975)] and [Cort v. Ash]"). The Court would, if it were on the Supreme Court of New Mexico, not extend <u>Cort v. Ash</u> any further. <u>See</u> Daniel P. Tokaji, <u>Public Rights and Private Rights of Action: The Enforcement of Federal Election Laws</u>, 44 Ind. L. Rev. 130-33 (2010)(describing federal courts' increasingly "restrictive" approach to implying rights of action

Although the Defendants argue that the Construction Industries Licensing Act does not provide a right of action for the Baileys to sue Atchinson and Plumbsquare Construction, the Baileys aver that they are "not asking the Court to imply a private cause of action." MTD Response at 10. The Baileys assert that Atchinson, Plumbsquare Construction, and the other Defendants "embarked on a joint venture, which is generally considered a partnership for a single transaction under New Mexico law." MTD Response at 7 (citing Lightsey v. Marshall, 1999-NMCA-147, ¶ 18, 992 P.2d at 908; N.M. Stat. Ann. §§ 54-1A-101(6), 54-1A-202(a)). The Baileys argue that "[a]ll partners are liable jointly and severally for all obligations of the partnership." MTD Response at 7 (citing N.M. Stat. Ann. § 54-1A-306(a)). The Baileys argue:

> The venture was guilty of unlicensed contracting, and although movants did not make themselves known to Bailey, did not oversee the Project, did not sign the Agreement, and were not paid directly by Bailey (*Complaint* ¶¶ 33-35), [Atchinson and Plumbsquare Construction] certainly played their role in providing a means for the unlicensed contracting and fraudulent inducement of Bailey to pay for the same (*Complaint* ¶¶ 67-74). No implied right of action is pled, because no implied right

into federal laws). If the New Mexico Legislature has supplied remedies for some statutes, but not others, the Court would not be inclined to add remedies that the New Mexico Legislature -- the elected branch of government -- has not provided. See Richard B. Stewart and Cass R. Sunstein, Public Programs and Private Rights, 95 Harv. L. Rev. 1193, 1207 (1982)(explaining that implied "private rights of action may usurp [an] agency's responsibility for regulatory implementation, decrease legislative control over the nature and amount of enforcement activity, and force courts to determine in the first instance the meaning of a regulatory statute"); John H. Bauman, Implied Causes of Action in the State Courts, 30 Stan. L. Rev. 1243, 1243 (1978)("On the one hand, an implied cause of action may further legislative goals by relieving the burden placed on overworked or indifferent administrators. On the other hand, an improperly implied cause of action may frustrate the legislature's purpose by circumventing bureaucratic expertise or prosecutorial discretion."); Ziglar v. Abbasi, 137 S. Ct. 1843, 1855 (2017)(cautioning that, "where Congress 'intends private litigants to have a cause of action,' the 'far better course' is for Congress to confer that remedy in explicit terms" (quoting Cannon v. University of Chicago, 441 U.S. 677, 717 (1979)). Moreover, the tort law claims -- conspiracy and forming a joint venture -- give the Baileys a cause of action against Atchinson and Plumbsquare Construction, so this situation is not a situation where the Baileys are without a remedy. In any case, this additional wrinkle -- the status and relevance of Ash v. Cort -- supports the Court's conclusion that this is a complex issue and that this is not a case where the Court confidently can say that the plaintiff has not possibly stated a cause of action against Atchinson and Plumbsquare Construction.

of action is necessary to Bailey's causes of action against [Atchinson and Plumbsquare Construction], [and] all of the Defendants, being joint venturers in this scheme, are jointly and severally liable for the penalty incurred as a result of the unlicensed contracting.

MTD Response at 11.

The Defendants do not respond to the Bailey's argument that the Defendants formed a joint venture and that, thus, each Defendant is jointly and severally liable for Markham, Barrientos, and Voltaire Builders' unlicensed contracting. See MTD Reply at 1-4. The Tenth Circuit and the Court have emphasized, however, that the party asserting fraudulent joinder bears the burden of proof. See Montano v. Allstate Indem. Co., 211 F.3d 1278, 2000 WL 525592, at *1; Zufelt v. Isuzu Motors Am., LCC, 727 F. Supp. 2d at 1124. Specifically, the "removing party must show that the plaintiff has 'no cause of action' against the fraudulently joined defendant." Brazell v. Waite, 525 F. App'x at 881 (quoting Dodd v. Fawcett Publ'ns, Inc., 329 F.2d at 85, and Roe v. Gen. Am. Life Ins. Co., 712 F.2d at 452 n.*). The Court concludes that, even if the Construction Industries Licensing Act does not provide the Baileys a right of action to sue Atchinson and Plumbsquare Construction, the Baileys may still be able to sue Atchinson and Plumbsquare for allegedly forming a joint venture in which some of the Defendants violated the Construction Industries Licensing Act. Because the Defendants do not counter this argument, the Court concludes that the Defendants have not satisfied the heavy burden of demonstrating that there is no possibility that the Baileys may have a cause of action against Atchinson and Plumbsquare Construction.

The Court also concludes that there is a possibility that the Baileys can establish a claim for civil conspiracy against Atchinson and Plumbsquare Construction. Markham and Voltaire Builders argue that the Baileys "do not allege any act or omission committed by Defendants

Atchinson and Plumbsquare," and "rely on baseless and unsupported assumptions regarding Defendants Atchinson and Plumbsquare." Notice of Removal ¶¶ 32-33, at 10. Atchinson and Plumbsquare Construction similarly argue that the Baileys cannot establish that "Plumbsquare committed some independent, unlawful act" that caused harm, Motion to Dismiss at 3 (citing Ettenson v. Burke, 2001-NMCA-003, ¶ 12, 17 P.3d at 445), and thus the Baileys "cannot satisfy the requirements for a claim of civil conspiracy," Motion to Dismiss at 4. The Baileys counter that their "civil conspiracy claim rests on a valid underlying cause of action, the defrauding of the Baileys by the Defendants, for which [Atchinson and Plumbsquare Construction] can be held liable jointly and severally individually along with the other Defendants." MTD Response at 7.

The Court agrees with the Baileys that their civil conspiracy claim rests on a valid, underlying cause of action -- the independent tort of fraud -- for which, if proven, the Baileys can hold the Defendants liable individually as members of the alleged conspiracy. See Ettenson v. Burke, 2001-NMCA-003, ¶ 20, 17 P.3d at 447. Although the Complaint's factual allegations related to fraud are slim, the Baileys note that there "has been no discovery," and the "record in this case has not yet been created." MTD Response at 9. The Baileys allege actions by each of the Defendants to support their civil conspiracy claim. See, e.g., Complaint ¶¶ 65-76, at 21-23. For example, the Baileys allege that "Atchinson caused Plumbsquare to allow Markham/Barrientos/Voltaire make use of its license for some consideration to Markham so that Markham could skirt the laws of the State of New Mexico and provide contracting services without the required New Mexico licensure to the Plaintiffs." Complaint ¶ 41, at 18-19.

The Defendants have not established fraudulent joinder, and thus the Court will not dismiss Atchinson and Plumbsquare Construction from the case. The fraudulent-joinder standard is not whether the complaint states sufficient facts to state a plausible claim, but rather whether the

defendants demonstrate that there is no possibility that the plaintiff will obtain a judgment against the defendants claiming fraudulent joinder. See Bio-Tec Envtl., LLC v. Adams, 792 F. Supp. 2d at 1214. As discussed above, the fraudulent-joinder "standard is more exacting than that for dismissing a claim under Fed. R. Civ. P. 12(b)(6); indeed, the latter entails the kind of merits determination that, absent fraudulent joinder, should be left to the state court where the action was commenced." Montano v. Allstate Indem., 211 F.3d 1278, 2000 WL 525592, at *2. To establish fraudulent joinder, the Defendants must "demonstrate that there is no possibility that [the Baileys] would be able to establish a cause of action against [Atchinson and Plumbsquare] in state court.'" Bio-Tec Envtl., LLC v. Adams, 792 F. Supp. 2d at 1215 (quoting Montano v. Allstate Indem., 211 F.3d 1278, 2000 WL 525592, at *4-5). In Dutcher v. Matheson, the Tenth Circuit rejected the defendants' claim of fraudulent joinder and explained that its conclusion "does not mean that the plaintiffs have stated a valid claim against [the defendants]. Or even that [the defendants] are not somehow fraudulently joined. But the defendants needed to clear a high hurdle to prove something they have yet to prove, i.e., fraudulent joinder." 733 F.3d at 989. Similarly, the Court does not conclude whether Baileys have stated a valid claim. The Court instead concludes that the Defendants have not cleared their "high hurdle to prove" fraudulent joinder, Dutcher v. Matheson, 733 F.3d at 989, because there is a possibility that the Baileys will obtain a judgment against Atchinson and Plumbsquare Construction. Accordingly, the Court will not dismiss Atchinson and Plumbsquare Construction, the parties are not diverse, the Court does not have subject-matter jurisdiction, and the Court therefore will grant the Motion to Remand and leave the Motion to Dismiss for the state court to decide.

III. **THE BAILEYS' ALTERNATIVE ARGUMENT FOR REMAND -- THAT REMOVAL WAS IMPROPER, BECAUSE BARRIENTOS DID NOT CONSENT TO REMOVAL -- LACKS MERIT, BECAUSE THE BAILEYS DID NOT SERVE BARRIENTOS, AND THUS BARRIENTOS' CONSENT WAS NOT NECESSARY FOR REMOVAL.**

Alternatively, had the Defendants established fraudulent joinder, the Baileys argue that removal was improper and remand is necessary, because Markham and Voltaire Builders did not acquire Barrientos' consent for removal. See Motion to Remand at 10-12. The Baileys argue that Barrientos -- who had not been served when Markham and Voltaire Builders filed the Notice of Removal in federal court -- was joined in the removal notice that Markham and Voltaire Builders filed in state court, and thus, the notice "operate[s] as a general appearance, thereby waiving service." Motion to Remand at 10. Citing 28 U.S.C. § 1446, the Baileys argue that "[m]ore than 30 days have passed since Defendant Barrientos fully appeared in the action, and he has not filed a notice of consent to the removal here." Motion to Remand at 12. The Baileys assert that "failure of a defendant to timely consent to removal within the statutory 30-day window requires remand." Motion to Remand at 12 (citing Zambrano v. N.M. Corr. Dep't, 256 F. Supp. at 1185). The Baileys aver that Barrientos' failure "to file and serve notice of consent within 30 days of his full entry of appearance in the case sought to be removed is [] fatal. The Notice of Removal is defective, and the case must be remanded on this alone, as well." Motion to Remand at 12. The Baileys also note that Markham and Voltaire Builders have not modified the removal notice in state court, which, unlike the Notice of Removal, includes Barrientos' name. See Remand Reply at 2.

Markham and Voltaire Builders argue that the Baileys are "deliberately misleading" the Court. Voltaire Remand Response at 2. Markham and Voltaire Builders' counsel say that they do "not represent Barrientos, . . . [do] not know Barrientos, and [have] never spoken with Barrientos." Voltaire Remand Response at 2. Markham and Voltaire Builders' counsel also say that, in the

Answer and in the Notice of Removal, they "clearly identified only" Markham and Voltaire Builders as clients. Voltaire Remand Response at 2. Markham and Voltaire Builders admit that they made a mistake by including Barrientos' name on the removal notice that they filed in state court, and they argue that "such an error cannot be the basis for a remand." Voltaire Remand Response at 2. The Baileys note that Markham and Voltaire Builders "represented to the Court that an errata would be filed," but the Baileys say they "are not aware of any such errata filing having been made or filed." Remand Reply at 5 (citing Voltaire Remand Response at 2). Markham and Voltaire Builders' counsel assert that they previously told the Baileys' counsel that they do not know where Barrientos is located, but that Markham and Voltaire Builders' counsel in a separate case have told them that "Barrientos indicated in a written statement filed in another proceeding that he has been in discussions with the Plaintiffs in this case." Voltaire Remand Response at 2 (citing Declaration of Walter Earl Steimel ¶¶ 3-5, at 4, filed August 14, 2019 (Doc. 27)("Steimel Decl.")). Markham and Voltaire Builders do not provide a citation or case name for the separate Texas proceeding. See generally Voltaire Remand; Steimel Decl.

At the September 6, 2019, hearing, the Court asked the Baileys if Barrientos had been served, and they responded that "there had been no formal service," as they could not locate Barrientos. Tr. at 2:20-21 (McKelvy). The Baileys noted that Markham and Voltaire Builders "entered an appearance on his behalf when they filed the notice of . . . removal in state court" and "requested relief on his behalf." Tr. at 2:24-25:3 (McKelvy). The Baileys argued that the entry of appearance "constitutes a waiver of any defects in service." Tr. at 3:10 (McKelvy). The Baileys averred that Markham and Voltaire Builders' notice in state court "was legally entered on behalf of Mr. Barrientos," and "more than 30 days passed without Mr. Barrientos filing a notice of consent to the notice of removal in the federal court." Tr. at 14:8-20 (McKelvy). The Baileys asserted that

their alternate basis for granting remand "is that there was no consent by all the parties to the action within 30 days as required." Tr. at 16:9-11 (McKelvy)(citing Zambrano v. N.M. Corrections Dep't, 256 F. Supp. 3d at 1185). Asked if the removal notice that Markham and Voltaire Builders filed in state court could constitute Barrientos' consent to removal, the Baileys responded that Barrientos must also consent to removal in the Notice of Removal that Markham and Voltaire Builders filed in federal court. See Tr. at 14:22-15:16 (Court, McKelvy).

Markham and Voltaire Builders responded that they "file[d] a document that indicated that we were going to represent Mr. Barrientos, however that document was incorrectly filed." Tr. at 4:5-7 (Ragsdale). Markham and Voltaire Builders' counsel said that they have never communicated with Barrientos and that they "intend to file a notice of errata if we need to to indicate to the Court, to the state court and to the federal court that we only represent Steve Markham and Voltaire Builders, Inc." Tr. at 4:9-13 (Ragsdale). Markham and Voltaire Builders' counsel stated that they "intend to cure [the] error and move forward representing only Mr. Markham and Voltaire Builders." Tr. at 4:23-24 (Ragsdale).

The Court concludes that removal did not require Barrientos' consent, because the Baileys have not served Barrientos. The removal statute permits a defendant to remove a case within thirty days after receipt of a copy of the initial pleading. See 28 U.S.C. § 1446. When there are multiple defendants, generally all must consent to join in the notice of removal for it to be effective. See Brady v. Lovelace Health Plan, 504 F. Supp. 2d 1170, 1172 (D.N.M. 2007)(Smith, M.J.)(citing 14C C. Wright & A. Miller, Federal Practice & Procedure § 3731, at 258 (3d ed. 1998)); 28 U.S.C. 1446(b)(2)(A) ("When a civil action is removed solely under section 1441(a), all defendants who have been properly joined and served must join in or consent to the removal of the action."). The failure of one defendant to join in the notice renders the removal notice procedurally defective,

which requires that the district court remand the case.  See Cornwall v. Robinson, 654 F.2d 685, 686 (10th Cir. 1981).  Courts generally refer to this requirement that all defendants served at the time of filing must join in the notice of removal as the unanimity rule or the unanimity requirement. See Tresco, Inc. v. Cont'l Cas. Co., 727 F. Supp. 2d 1243, 1247-48 (D.N.M. 2010)(Browning, J.); McShares, Inc. v. Barry, 979 F. Supp. 1338, 1342 (D. Kan. 1997)(Crow, J.)(citations omitted).

> The unanimity requirement is excused under two circumstances.  First, a nominal or formal party is not required to join in the petition for removal. . . . Second, a defendant who has not yet been served with process is not required to join. . . .  When fewer than all of the defendants have joined in a removal action, the removing party has the burden under 28 U.S.C. § 1446 to explain affirmatively the absence of any co-defendants in the notice of removal.

Brady v. Lovelace Health Plan, 504 F. Supp. 2d at 1173 (citing See Tri-Cities Newspapers, Inc. v. Tri-Cities Printing Pressmen & Assistants' Local, 427 F.2d 325, 327 (5th Cir. 1970); Pullman Co. v. Jenkins, 305 U.S. 534, 540-41 (1939); N. Ill. Gas Co. v. Airco Indus. Gases, 676 F.2d 270, 273 (7th Cir. 1982))(emphasis added).  See Tresco, Inc. v. Cont'l Cas. Co., 727 F. Supp. 2d at 1247-48 (similar).

In the Notice of Removal, Markham and Voltaire Builders explain that "Barrientos is not required to join in or consent to removal as he has not yet been served."  Notice of Removal ¶ 38, at 12.  The Baileys contend, however, that Barrientos' consent is required, because Markham and Voltaire Builders filed a removal notice in state court on Barrientos' behalf, and the removal notice "operate[s] as a general appearance, thereby waiving further service."  Motion to Remand at 10. Although the Baileys cite New Mexico caselaw supporting the proposition that Markham and Voltaire's removal notice "'amount[s] to a general appearance'" which waives service defects, Motion to Remand at 11 (quoting Barrera v. N.M. Motor Vehicle Div., 2005-NMCA-005, ¶ 7, 112 P.3d 296, 298), the Baileys do not cite any caselaw supporting their argument that Barrientos'

consent to removal is necessary, despite their admission that Barrientos was never served, see Tr. at 2:20-21 (McKelvy). The Baileys cite Zambrano v. New Mexico Corrections Department only to argue that the "failure of a defendant to timely consent to the removal within the statutory 30-day window requires remand." Voltaire Remand Response at 12 (citing Zambrano v. N.M. Corr. Dep't, 256 F. Supp. 3d at 1186). In Zambrano v. New Mexico Corrections Department, unlike here, all of the defendants were served. See Zambrano v. N.M. Corr. Dep't, 256 F. Supp. 3d at 1183. The Honorable William P. Johnson, now-Chief United States District Judge for the United States District Court for the District of New Mexico, held that, in a multidefendant lawsuit, the "Defendants [are] required to obtain unanimous consent to removal from each served Defendant no later than the date on which the last-served Defendants . . . had to file a notice of removal, in order for removal to be effective." Zambrano v. N.M. Corr. Dep't, 256 F. Supp. 3d at 1183 (emphasis added). But see Bonadeo v. Lujan, No. CIV-08-0812 JB/ACT, 2009 WL 1324119, at *6-7 (D.N.M. April 30, 2009)(Browning, J.)("The statute provides no guidance regarding when the thirty-day period begins to run -- when the first defendant is served or when the last is served. . . . While the Tenth Circuit has not spoken on the issue, several judges in the District of New Mexico have adopted the traditional rule and stated that, when there are more than two defendants, the rule is that the thirty-day time period commences when service of process is accomplished on the first-served defendant."). Now-Chief Judge Johnson also noted, however, that a "defendant's consent to removal is not necessary where he or she has not been served at the time another defendant filed its notice of removal." Zambrano v. N.M. Corr. Dep't, 256 F. Supp. 3d at 1182 (citing Sheldon v. Khanal, 502 F. App'x 765, 770 (10th Cir. 2012)(unpublished)).

The removal statute is clear that, if removal is based on federal diversity jurisdiction, then "all defendants who have been properly joined and served must join in or consent to the removal

of the action." 28 U.S.C. § 1446(b)(2)(A) (emphasis added). See Sheldon v. Khanal, 502 F. App'x at 770 (concluding that 28 U.S.C. § 1446(b)(2)(A)'s "clear statutory language requir[es] only *served* defendants to consent to removal" (emphasis in original)). In Kiro v. Moore, the Court faced a similar issue to the one that the Baileys raise -- "whether all defendants, including those who have not yet been served, must join in the notice of removal," where the defendants' counsel entered an appearance on behalf of the "Defendants," only some of whom had been served. 229 F.R.D. at 229-30. The defendants' counsel filed a notice of removal on behalf of the "Defendants," and the counsel argued that "he removed only on behalf of the served Defendants." Kiro v. Moore, 229 F.R.D. at 230. The plaintiff argued that, "by entering an appearance on behalf of the 'Defendants,' [the defendants' counsel] waived service for [the unserved defendants]." Kiro v. Moore, 229 F.R.D. at 230. The Court reasoned:

> Although the parties and the Court could not locate case law from the United States Court of Appeals for the Tenth Circuit addressing whether all defendants, including those who have not yet been served, must join in the notice of removal, several other district courts have concluded that, if defendants have not been served, then they need not join in the notice of removal. See, e.g., Jasper v. Wal-Mart Stores, 732 F. Supp. 104, 105 (M.D. Fla. 1990)(noting "all defendants, served at the time of filing the petition, must join in the removal petition"); Crawford v. Fargo Mfg. Co., 341 F. Supp. 762, 763 (M.D. Fla. 1972)("There is authority to the effect that all defendants need not sign the original removal petition. However, it is clear that all defendants who have been served must join in the petition for removal." (citation omitted)). See also 14C Charles A. Wright, Arthur R. Miller, Edward H. Cooper, J. Steinman, Federal Practice & Procedure § 3731 (2005)("[D]efendants who are not served may be ignored, both for jurisdictional purposes and for the purpose of requiring their joinder in the notice of removal."). Thus, when the served Defendants removed the action to federal court, they may not have joined the unserved Defendants in that action.
>
> [The plaintiff], however, contends that, by entering an appearance on behalf of the "Defendants," [the defendants' counsel] waived service for [the unserved defendants]. Even assuming that [the defendant's] did, in fact, enter an appearance on behalf of [the unserved defendants], which [the defendant's counsel] maintains he never did, [the plaintiff] provides no authority to support the position that by entering an appearance, [the defendants' counsel] waived [the unserved

defendants'] service of process. The plain language of rule 12(h) [of the Federal Rules of Civil Procedure] -- which states that the defense of lack of process or lack of proper service of process must be raised before the party's first "responsive pleading" -- does not support [the plaintiff's] contention. The Court could not locate any authority to support the assertion that, by entering an appearance on behalf of all Defendants, it would constitute a "responsive pleading" such that [the defendants' counsel] waived service as to the remaining Defendants who had not yet been served. To the contrary, the Court located case law from the United States Court of Appeals for the Seventh Circuit and the District of Columbia which rejected the argument that, by entering an appearance on behalf of a client, counsel waives the client's right to service of process. According to the Seventh Circuit, "the filing of an 'appearance form' does not relieve plaintiff from executing proper service of process upon the defendants." Lewellen v. Morley, 909 F.2d 1073, 1077 (7th Cir. 1990). Accord Hudson v. Christian, No. 93-7240, 1994 WL 315471, at *1 (D.C. Cir. June 15, 1994)(per curiam)("[C]ounsel's entry of appearance in this court constitutes service on [the defendant] is without merit.").

Kiro v. Moore, 229 F.R.D. at 230-31.

Seven years after the Court decided Kiro v. Moore, the Tenth Circuit held in Sheldon v. Khanal that 28 U.S.C. § 1446(b)(2)(A)'s "clear statutory language requir[es] only *served* defendants to consent to removal." Sheldon v. Khanal, 502 F. App'x at 770 (emphasis in original). Although Sheldon v. Khanal is an unpublished opinion, the Baileys offer no contrary caselaw to support their argument that, although they did not serve Barrientos, Barrientos' consent to removal is necessary. Markham and Voltaire Builders adamantly maintain that they do not represent Barrientos, and that the removal notice that they filed in state court erroneously included Barrientos' name. See Voltaire Remand Response at 2. At the September 6, 2019, hearing, the Court asked Markham and Voltaire Builders' counsel how the error occurred, and Markham and Voltaire Builders' counsel responded that, when they first discussed representing Markham and Voltaire Builders, they were

under the impression that Mr. Barrientos was on the same page as we were. We prepared one entry of appearance. As time progressed, we learned that we were not all on the same page. And therefore we prepared another one indicating [] that we were going to be representing Mr. Markham and Voltaire Builders only and the

wrong document was filed. . . .  So we have no intent to represent [Barrientos]
going forward in any lawsuit.

Tr. at 5:9-21 (Ragsdale).  The Court concludes that Markham and Voltaire Builders' erroneous

filing in the state court does not obviate the rule that only served defendants must consent to

removal.  See 28 U.S.C. 1446(b)(2)(A); Sheldon v. Khanal, 502 F. App'x at 770; Kiro v. Moore,

229 F.R.D. at 230-31.  Barrientos' consent was not necessary, because, as the Baileys admitted at

the hearing, "there had been no formal service [of Barrientos]," as they could not locate him.  Tr.

at 2:20-21 (McKelvy).  Accordingly, although the Court concludes above that the parties' lack of

complete diversity requires remand, the Court does not conclude that, in the alternative,

Barrientos' lack of consent also requires remand.

IT IS ORDERED that: (i) the Plaintiffs' Motion to Remand the Case to State Court, filed

July 26, 2019 (Doc. 17), is granted; (ii) this case is remanded to the Fifth Judicial District Court,

County of Chaves, State of New Mexico; and (iii) Defendant Rick F. Atchinson and Plumbsquare

Construction, Inc.'s Motion to Dismiss for Failure to State a Claim, filed June 25, 2019 (Doc. 7),

is left for the Fifth Judicial District Court to decide.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Kelly Mack Cassels
Ian D. McKelvy
Sanders, Bruin, Coll & Worley, P.A.
Roswell, New Mexico

    *Attorneys for the Plaintiffs*

Walter Earl Steimel, Jr.
Steimel Conner Law Group
Alexandria, Virginia

--and--

Luke W. Ragsdale
Ragsdale Law Firm
Roswell, New Mexico

*Attorneys for Defendants Steve Markham and Voltaire Builders, LLC*

Sean R. Calvert
Calvert Menicucci, P.C.
Albuquerque, New Mexico

*Attorneys for Defendants Rick F. Atchinson and Plumbsquare Construction, Inc.*